Wheler, J.
This action is one in equity, brought to charge the defendants, as stockholders of the Metropolitan Bank of Buffalo, with liability for the debts of the bank.
The Metropolitan Bank was organized in 1891, under the Banking Law of the State of Hew York, and thereafter conducted a banking business in the city of Buffalo, and until the 10th day of August, 1901. It had a nominal capital of $200,000. For a period of a month prior to August- 10, 1901, there had been large withdrawals by depositors of casjh from the Metropolitan Bank. It had been compelled to borrow money from other banks in order to continue its business. It borrowed from The German Bank $75,000 on July 9, 1901, and $50,000 July twenty-fourth of the same year. To secure these loans by The German Bank, it turned over to said bank, as collateral, good commercial paper *654 which it held, more than sufficient in amount to pay the. loans so made to it. The situation became so acute that a representative of the State Banking Department came to Buffalo for the purpose of watching the turn of affairs. About this time the officers of the Metropolitan Bank opened negotiations with The German Bank looking to an arrangement by which The German Bank would advance sufficient money to pay all the depositors of the Metropolitan Bank. On Saturday, the 10th day of August, 1901, the Metropolitan Bank having arrived at an understanding with The German Bank, a meeting of the board of directors of the Metropolitan Bank was held, and a resolution unanimously passed that the bank should “ go into voluntary liquidation, and enter into agreement with The German Bank in accordance with the agreement read for that purpose.”
Thereupon the Metropolitan and German Banks executed the following agreement:
“ This Agreement, made this 10th day of August, A. D., 1901, between the metropolitan bank, of the first part, and the german bank, of the second part, both being Banking corporations organized under the laws of'the State of Hew York, and both located and doing business in Buffalo, Erie County, Hew York, witnesseih:
“ Whereas, the party of the first part has been engaged in the banking business for several years last past in Buffalo, and in the course of such business has acquired divers assets of various nature,
“ And Whereas, it has been thought desirable by its officers and the board of its directors, that it should go into voluntary liquidation, and thereby avoid, so far as may be, the expenses incident to a receivership.
“ Whereas, the party of the second part is willing to undertake such liquidation upon the terms hereinafter stated:
<e Now therefore, in consideration of the premises and One Dollar to each of the parties in hand paid by the other, the receipt whereof is hereby acknowledged, it is agreed between the parties hereto as follows:
" First. The party of the first part hereby pledges to the *655 party of the second part all and singular its assets, property and effects of every name, nature and kind as security for the advance hereinafter specified, and it agrees that it will, when and as requested, by proper assignment and special instrument in each case, make valid transfers of any particular portion of such assets necessary to comply with the statutes regarding the recording of instruments and so as to enable the second party to make proper, adequate and easy proof of its rights in the premises.
“ Second. The party of the second part agrees that it will advance to the party of the first part, when and as the same shall be needed, sufficient moneys to pay all depositors of the party of the first part in full. A considerable portion of the ássets of the party of the first part consists of real estate located in the City of Buffalo and elsewhere; certain of this property is incumbered. Such sums as shall be needed for the purpose of carrying this property, subject to the limitation hereinafter mentioned, shall also be advanced by the party of the second part when and as the. same shall be required.
“ Hothing herein contained shall without the consent of the party of the second part require it to pay any portion of the principal secured by either of such mortgages upon ■the real estate of the party of the first part.
" Third. For all advances made by the party of the second part under the preceding paragraph it shall be entitled to receive interest at the rate of six per cent, per annum from the time of the advance until the money advanced be refunded.
“ Fowdh. The party of the second part shall also be entitled to receive as compensation for its services in the matter of such liquidation the sum of twenty .thousand DOLLARS.
" Fifth. In the management of the property of the party of the first part hereinbefore referred to, and in the conversion of its assets, due diligence shall be used to make the conversion as rapidly as it can be done without undue sacrifice.
“ The board of directors of the party of the second part *656 shall at all times have the controlling voice as to the method of such conversion.
*655 Jk ' 'W "T
*656 “Sixth. Jacob Dilcher, the president of the party of the first part, shall be employed to assist in the conversion of the assets of the party of the first part; and his salary shall be paid out of the assets of the party of the first part hereinbefore referred to, at the rate of Four thousand Dollars per annum.
“Seventh. The legal services incident to the liquidation of the party of the first part shall be performed by Hoses Shire and Robert F. iSchelling, or by such other counsel as shall be satisfactory to the party of the second part. The compensation for the services so rendered shall be paid out of such assets and the amount thereof shall be subject to audit and approval by both of the parties hereto.
" Eighth. Each of the parties shall devote its best energies to the conversion of such assets as speedily' as possible, having due regard to the avoidance of sacrifice with respect thereto.
“ The books and papers of the party of the first part shall be placed in the custody and control of the second party, subject to the inspection of the party of the first part, or its officers, at all times. The first party shall take no further deposits after this date; and, so far as is possible, the influence of its officers shall be directed to secure to the party of the second part such accounts heretofore kept with the party of the first part as shall be deemed desirable.
“Ninth. When the conversion has proceeded to such an extent as to render it necessary, a receivership shall be applied for, if thought best, to dissolve the party o'f the first part. Such receiver shall be nominated by the party of the second part, and in that event the receiver shall serve to a conclusion .without personal charge of fees or commissions. Ho receivership shall be applied for without the consent of the party of the second part, nor shall any of the assets handed over to it or pledged to it 'be taken from its possession, except through conversion, until it shall have been fully paid for all sums theretofore advanced by it, including interest thereon and its compensation as hereinbefore fixed.
*657 " Tenth. The party of the first part shall change its place of business to the banking office of the party of the second part, subject to the approval of the Superintendent of Banks.
“ Eleventh. The party of the first part agrees that it will procure and deliver to the party of the second part a proper guaranty of certain of its directors and stockholders against any and all loss which it may in any wise sustain by reason of any advance by it made pursuant to this agreement. 3STo such guaranty shall render any one director liable for the engagement of another, nor for more than the par value of his stock.
“ In witness whereof, the parties hereto have caused their respective corporation seals and signatures of their respective executive officers to be hereunto affixed the day and year first above written.
“Metropolitan Bank,
[Seal] “ By Jacob -Dilcher, Prest.
“ The German Bank,
[Seal] “ By E. A. Georg-er, Prest.”
A personal guaranty of the directors of the Metropolitan Bank aggregating $57,200 was executed and delivered pursuant to the eleventh clause of the liquidation agreement. The Metropolitan Bank received no further deposite, and The German Bank took possession of its assets.
Hone of the stockholders of the Metropolitan Bank received notice of the intention to execute the liquidation agreement. Ho meeting of that body was called to authorize its execution, and no meeting of stockholders was ever called to ratify the action of the directors in making it.
■Substantially all the depositors were paid between the 12th day of August, 1901, and the 21st day of December, 1901, by The German Bank. This was done by calling in all the pass-books of depositors of the Metropolitan Bank, writing them up, ascertaining the balance due and owing each depositor. The depositor thereupon drew his check on the Metropolitan Bank for the amount of his deposit, which *658 was certified to by Hr. Dilcher, the president of the Metropolitan Bank, and the same was paid by The German Bank.
Mr. Dilcher was employed under the liquidation agreement to assist in liquidating the bank’s assets, and was allowed a salary of $4,000 per year, paid from the proceeds realized from the assets.
The face value of the bills discounted of the Metropolitan Bank at the time of the liquidation agreement amounted to upwards of a million dollars. It also had other property of a considerable value.
From the date of the liquidation agreement to December, 1901, The German Bank paid to depositors, principal and interest, $795,232.48. The collateral turned over to The German Bank as collateral to the note given for the loan of $50,000 made to the Metropolitan Bank on July 24, 1901, although apparently more than sufficient was realized therefrom to pay the note, was not applied by The German Bank in that way; but the sums realized therefrom were credited to the Metropolitan Bank generally for the repayment of money advanced to pay depositors. On June 11, 1903, The German Bank commenced an action against the Metropolitan Bank to recover $315,077.23, consisting of the sum of $245,077.23, the balance claimed to be then due and owing on account of moneys advanced to pay its depositors, $50,000 for the note of July 24, 1901, and $20,000 for alleged services in liquidating the affairs of the Metropolitan Bank.
Thereafter, and on July 2, 1903, the directors of the Metropolitan Bank held a meeting at which the president and attorney for The German Bank were present. A statement of bills discounted and unpaid was presented, and it was then and there agreed to credit the Metropolitan Bank with re-discounts, amounting to $85,055.62, leaving a balance due The German Bank of $230,021.61 against which The German Bank at that time still held a large amount .of collateral, consisting of mortgages, real estate and notes.
Thereafter, and on July 16, 1903, a judgment was entered in favor of The German Bank and against the Metropolitan Bank, for $237,289.47, being the amount prayed for in the complaint, with interest and costs, less the said sum *659 of $85,055.62, agreed to be credited thereon. Execution was issued and returned unsatisfied August 21, 1903.
Thereafter a motion was made, on October 1, 1903, to vacate this judgment and for leave to answer. This motion was denied by the Special Term, and the order of the Special Term affirmed on appeal. We shall have occasion to refer to this motion hereafter and, therefore, will say nothing further concerning it at this time.
The German Bank continued to realize upon such assets as it had in its possession until on or about the 4th day of December, 1904, when its own doors were closed by order of the Superintendent of Banks. On the 21st day of December, 1904, a judgment of dissolution was entered in an action brought by the Attorney-General against The German Bank for that purpose, and Albert J. Wheeler was appointed its permanent receiver.
This action was commenced on or about the 27th day of July, 1905, by the receiver of The German Bank. Thereafter and on or about the 8th day of January, 1906, the receiver of The German Bank transferred substantially all of the assets of The German Bank, including its claim against the Metropolitan Bank, to the plaintiff, Assets Realization Company. The Assets Realization Company was substituted, by order of this court, as party plaintiff in place of the receiver of The German Bank. The Assets Realization Company received from the receiver of The German Bank certain of the assets of the Metropolitan Bank remaining unconverted, and proceeded to realize on them, and, after realizing on some, sold the balance at public auction for the sum of $5,000.
It is claimed there is now due the plaintiff from the Metropolitan Bank the sum of $247,801.24.
This action seeks to charge the stockholders of that hank with the statutory liability imposed by section 71 of the Banking Law for the benefit of the creditors of the bank.
There are many other facts bearing upon the question of the liability of individual defendant stockholders, peculiar to certain individual defendants, which it is not necessary to set forth in this general statement of the facts. If it *660 becomes necessary, these special facts may be referred to later in the opinion, but it is sufficient for the present to content ourselves with a" statement of the facts which pertain to the general questions involved in the disposition of this case.
Lying at the very threshold of. the investigation of this case is the important question as to the force and effect of the judgment recovered on July 16, 1903, by The German Bank against the Metropolitan Bank for the indebtedness ■ alleged to have then been owing by.the Metropolitan Bank. The plaintiff’s counsel contends that this judgment is con-, elusive on the defendants in this action as to the amount of indebtedness of the Metropolitan Bank to The German Bank, and the sum recoverable by -the plaintiff is the amount due upon the execution issued upon such judgment.
If the plaintiff’s contention is correct, then the various defenses raised and litigated in this action are unavailing and may be dismissed without further consideration. We are of the opinion, however, that the plaintiff’s contention is not well supported.
One of the earlier cases arising in this State is that of Moss v. McCullough, 5 Hill, 131. It was there held, in a well-considered opinion by Judge Oowen, that, in an action to charge a stockholder with his statutory liability to creditors, the judgment obtained against the corporation could not be used by the plaintiff either as conclusive or even prima facie evidence of the genuineness or validity of the debt, but was admissible only for the purpose of showing the liability of the company to pay in the maimer prescribed by charter. The learned judge states in substance that the stockholder’s liability to creditors of the corporation is analogous to that of a surety, the company being the primary debtor, and the stockholder liable only in the event of the creditor being unable to realize on his demand from the principal debtor; that, in such cases, the judgment 'against the principal is not binding on the surety and, by parity of reasoning, the stockholder should not be precluded from a valid defense by judicial proceedings against the corporation.
This was later followed by the case of Miller v. White, 50 N. Y. 137. In this case the action was to charge the *661 trustees of a manufacturing corporation with the debt of the corporation for a failure to make and file an annual report required by the statute under which the company was incorporated (chapter 40, Laws of 1848). The court held that the judgment against the corporation was neither conclusive nor competent evidence of a liability on the part of the directors, because there was neither privity of parties nor privity of interest, and added that stockholders stand, in this respect, the same as trustees, citing with approval the case of Moss v. McCullough, 5 Hill, 131.
The question was again before the Court of Appeals in the case of McMahon v. Macy, 51 N. Y. 155, where the action was one against a stockholder. In this case it was again held that the judgment against the corporation was not even prima facie evidence in the action against the -stockholder. Judge Gray, in an able opinion, reviews the prior decisions and reaches the conclusion stated.
To the same effect are the eases of Strong v. Wheaton, 28 Barb. 616; Berridge v. Abernethy, 24 Wkly. Dig. 513; Truesdell v. Chumar, 75 Hun, 416.
The same decision is laid down and followed in Schrader v. Manufacturers’ National Bank, 133 U. S. 67, and Ward v. Joslin, 186 id. 142, holding that it is open for stockholders to show that a judgment rendered against the corporation was not enforceable against them, because the corporation had exceeded its powers in making the contract sued on.
The reasoning and logic upon which these decisions are based cannot be questioned. The stockholder, in the action against the corporation, is not a party to the proceeding. Until the action is brought to enforce his individual liability, he has not had his day in court. He is not privy to the corporation. The fund to be created by the statutory liability imposed on stockholders by the Banking Act is not an asset of the corporation. Howarth v. Angle, 162 N. Y. 187, 188.
It cannot be enforced in an action by the corporation. It belongs exclusively to the creditors — and not to all creditors, but only a limited class of creditors — to such whose debts are payable within two years, and then only in case *662 an action to collect their claims is brought against the corporation within two years from the time the debt becomes due. Stock Corp. Law, § 55; Hirshfeld v. Bopp, 145 N. Y. 91.
In an action against 'the corporation, clearly those defenses peculiar to the stockholder would not be available to the corporation. A judgment against the corporation undoubtedly binds the assets and property of the .corporation itself, but does not bind the stockholders. Miller v. White, 50 N. Y. 137.
The stockholders, no matter how meritorious a defense they might have, would have no right to be made parties to an action against the corporation and contest in that action the validity of the debt in suit. It would be against every principle of justice and equity to hold the stockholders liable by virtue of a judgment against a corporation where they had no opportunity to appear and litigate their liability. Consequently the courts have properly held that the judgment against the corporation' itself is neither- conclusive nor prima facie evidence of the liability of the stockholder, and that the judgment is only evidence of the fact that the creditor has exhausted his remedy against the corporation primarily liable, and complied with -the requirements of the statute-that, before suing the stockholder, he shall have an execution returned unsatisfied against the corporation. We do not understand that the doctrine has ever been questioned in this State or modified by any of its decisions.
The plaintiff cites and relies on a number of cases to support its contention which we now proceed briefly to discuss.
Among these cases is that of Stephens v. Fox, 83 N. Y. 313. In that case the action was brought to charge a stockholder in a railroad corporation' for his liability under the provisions of the general Railroad Law (Laws of 1850, chap. 140, § 10, as amended by Laws of 1854, chap. 282), for the amount unpaid on his stock; and it was held the record of the judgment against the corporation was competent evidence of the plaintiff’s status as a creditor and of the amount due him. But it was also held that the provision of the statute giving the creditor the right to sue the stockholder for *663 the amount of his unpaid stock subscription did not impose a penalty or original liability, but simply conferred upon the creditor of the corporation a right to pursue, for the satisfaction of his claim, the indebtedness of the stockholder to the corporation. In other words, the statute simply empowered the judgment creditor to follow and collect the amount unpaid on the stock, just as he would have the right to reach any. other asset of the corporation by an action in the nature of a creditor’s bill. The amount unpaid on the stock was an asset belonging to the corporation, but the limited statutory liability imposed on stockholders for debts of a corporation, over and above and in addition to the amount unpaid on their stock, is not an asset of the corporation, but a liability, belonging not to the corporation, but to a limited, class of creditors. This clearly distinguishes the case of Stevens v. Fox from the other eases we have heretofore cited. The judgment against the corporation undoubtedly is conclusive, when one seeks to reach the assets of the corporation, in whosesoever hands such assets are found. But the rule goes no further.
Plaintiff also cites and relies on the case of Howarth v. Angle, 162 N. Y. 179. This case simply holds that, where a receiver of a foreign corporation is vested with the right under the statutes of a foreign State to enforce the statutory liability of stockholders, and where the liability has been established by legal proceedings in a foreign court, and where a stockholder resident here has had an opportunity to contest all the essential facts and his exact liability has been determined by common law evidence, the Court of Appeals will affirm a recovery here by the receiver, on the principles of interstate comity. Instead of sustaining the plaintiff’s contention that the judgment against the corporation is conclusive, it seems to be an authority that, in order to bind the stockholder, his liability must be established by independent common law evidence in a proceeding to which he is a party and where he has had an opportunity to litigate his liability.
The plaintiff’s counsel also cites the case of Firestone Tire & Rubber Co. v. Agnew, 194 N. Y. 165. This, however, *664 was not an action to charge stockholders with the statutory liability for the debts of the corporation, hut an action, pursuant to the provisions of section 54 of the Stock Corporation Law, to recover the balance unpaid on their stock subscriptions, to the extent necessary to satisfy the unpaid indebtedness of said corporation. In this respect it was like the case of Stephens v. Fox, 83 N. Y. 313. In other words, the action was to reach an asset of the corporation itself, for stock subscriptions are obligations of stockholders owing directly to the corporation and enforceable by the corporation' for its own benefit. As we have previously shown, the liability imposed by section 52 of the Banking Law, or by section 56 of the Stock Corporation Law, is of an entirely different nature and inures only to the benefit of those creditors who fall within the limitations stated in section 59 of the Stock Corporation Law. The Court of Appeals, therefore, held, in the Firestone Tire & Rubber Co. case, that, where a corporation has been put into bankruptcy, the duty of recovering a judgment as a condition precedent to enforcing a claim for unpaid stock subscriptions was dispensed with, and a compliance with section 55 was not necessary ; hut that the purposes of that section were met by the bankruptcy proceedings. The court nowhere held, by implication or otherwise, that a judgment against the corporation was conclusive in an action to charge stockholders with liability under section 56 of the Stock Corporation Law, or under section 52 of the Banking Law.
¡Neither is there anything in the case of Bernheimer v. Converse, 206 U. S. 516, which in any way militates against the authority of Schrader v. Manufacturers’ National Bank, 133 U. S. 67, or of Ward v. Joslin, 186 id. 142.
We should not, however, dismiss this branch of the case without reference to an amendment to section 55 of the Stock Corporation Law, passed in 1890 (now Consol. Law, § 59), subsequently to the making of the decisions rendered by the courts of' our State and cited earlier in this opinion. By this amendment there were added to and incorporated in this section the words italicized in the section here given in full:
*665 “ Limitation of stockholder’s liability.— Ho action shall be brought against a stockholder for any debt of the corporation until judgment therefor has been recovered against the corporation, and an execution thereon has been returned unsatisfied in whole or in part, and the amount due on such execution shall he the amount recoverable, with costs against the stockholder. Hó stockholder shall be personally liable for any debt of the corporation not payable within two years from the time it is contracted, nor unless an action for its collection shall be brought against the corporation within two years after the debt becomes due; and no action shall be brought against a stockholder after he shall have ceased to be a stockholder, for any debt of the corporation, unless brought within two years from the time he shall have ceased to be a stockholder.”
It is argued, on behalf of the plaintiff, that this amendment in effect changes the rule which before obtained and now makes the judgment against the corporation conclusive against the stockholder.
In view of the reasons which underlie and are the basis of the former adjudications of our courts, we are of the opinion that such was not the purpose or effect of the amendment in question. We think that the amendment was intended as a limitation on the amount of the recovery against the stockholder, that the recovery against the stockholder should, in no event, exceed the amount of the recovery against the corporation. The words “ and the amount due on such execution shall he the amount recoverable against the stockholder ” are incorporated in and form a part of the section relating to the “ Limitation of Stockholder’s Liability,” and must be deemed a “ limitation,” and not otherwise, restricting in terms the amount of the recovery and not going to the extent of taking away defenses which theretofore existed. The amendment must be ° given a reasonable interpretation in the light of the law as it exists and existed at the time of its passage.
Section 71 of the Banking Law makes stockholders liable “ to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in *666 such shares.” The liability of each individual stockholder cannot exceed the par value of his stockholding; and yet, if we were to give the amendment quoted its liberal meaning, that “ the amount due on the execution shall be the amount recoverable against the stockholder ” we would thereby enlarge the stockholder’s liability to any amount unpaid on the execution. Such, manifestly, was not 'the intention of the Legislature; but it was rather one confirming the recovery against the stockholder to an amount not in excess of the amount due on the execution. Clearly, it was not the purpose of the act to take away any valid and legitimate defense to a recovery on the merits.
Again, it has been urged that the defenses raised by the defendants in their answers in this action have already been passed on adversely to their contentions in the action brought against the Metropolitan Bank by The German Bank which resulted in the judgment of July 16, 1903, for $237,289.47.
It appears that thereafter, and on October 1, 1903, a motion was made on behalf of the Metropolitan Bank to open the default, vacate the judgment and set aside execution issued thereon, and for leave to serve an answer to the complaint. The moving papers tendered a proposed answer which set up many of the defenses interposed in this action brought to charge the present defendants as stockholders.
• This answer was verified by Mr. Jacob Dilcher, the president of the Metropolitan Bank. The motion to open the default and for leave to defend was made at the Erie Special Term on October 22, 1903. In opposition to the granting of the motion, was read the affidavit of nearly all of the directors of the Metropolitan Bank, opposing the" opening of the default and vacating the judgment, and asking, in substance, that the judgment be permitted to stand. The Special Term thereupon denied the motion to vacate and set aside the judgment in question. From the order of the Special Term'an appeal was taken to the Appellate Division of this court for the Fourth Department which, in turn, affirmed the order appealed from, and the judgment of July sixteenth stands unvacated. It is contended now in this action that the merits of the defenses here raised have already *667 been passed on and decided' adversely to defendants on the motion to vacate the judgment in question.
We do not understand that such was the case. Ho opinion appears to have been written by the justice presiding at the Special Term, or by the Appellate Division, on the disposition of the appeal. It is apparent, however, that the motion and appeal must have been disposed of upon other grounds than that the proposed answer offered no defense to the action. It was a good and sufficient reason for denying the motion in question that the directors of the Metropolitan Bank, or at least a clear majority of them, opposed vacating and setting aside the judgment. The motion was made, not on behalf of the stockholders of the bank, but on behalf of the bank itself, which was the only party having any standing in court to make the motion. The conduct of the affairs of the corporation was vested by law in the board of directors; and, when the directors, or a large majority of them, came into court and opposed the vacation of a judgment against the corporation, the court had no alternative but to deny the application. The court could not insist in involving a corporation in defending an action which it declined to defend. In other words, the attorneys making the motion in behalf of the Metropolitan Bank found themselves in court without a client. Under such circumstances, we are unable to see what other disposition the court could have made of the motion to open the default. Certainly the disposition of that motion did not involve passing upon the sufficiency or merits of the defenses now raised in the action to charge stockholders who were not before the court in the motion to open the default of the corporation.
It further appears from the affidavits read on the motion, that the judgment in question was permitted to stand as the result of the refusal of the board of directors to take any action to defend. When we consider the fact that each and all of the members of the board of directors had executed a personal guaranty to The German Bank to save that bank against loss, to the extent of their individual holdings as stockholders, by reason of The German Bank having entered into the liquidation agreement of August 10, 1901, their *668 refusal to defend, no matter what the honesty of their motives may have been, makes the judgment obtained in law almost a collusive one, so far as the other stockholders are concerned. It is not necessary for this court to go to that extent in the disposition of this case, but we are warranted in holding that the" substantial merits of the defenses raised have never been passed upon by the decision of the motion to vacate the judgment against the Metropolitan Bank.
We, therefore, conclude .that the judgment of July 16, 1903, is not conclusive on the stockholders, but that they have the right to assert any defenses open to them.
The great underlying question, affecting equally the right to a recovery against each and every defendant, is the question whether the indebtedness, if any, created pursuant to the liquidation agreement, is an indebtedness for which the stockholders of the Metropolitan Bank became liable. We are of the opinion this alleged indebtedness is not' secured by the statutory liability imposed on the stockholders of the Metropolitan Bank.
Section 71 of the Banking Law provides: “ Except as prescribed in the stock corporation law, the stockholders of every such corporation shall be individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares. In -case any such corporation shall have been or shall be dissolved by final order or judgment of a court having jurisdiction, and a permanent receiver or receivers of the said corporation shall have been or shall be appointed, all actions or proceedings to enforce -the liability of stockholders under this section shall be taken and prosecuted only in the name and in behalf of such receiver or receivers, unless such receiver or receivers shall refuse to take such action or proceeding upon proper request in that behalf made by any creditor, and in that event, such action or proceeding may be taken by any creditor of the corporation.”
Although the statute makes stockholders liable for “ all *669 contracts, debts and engagements .of such corporation,” the application of the statute is nevertheless to be restricted to such debts, contracts and engagements as have been duly contracted in the ordinary course of its business, and are not ultra vires in their nature. Richmond v. Irons, 121 U. S. 27; Schrader v. Manufacturers’ Nat. Bank of Chicago, 133 id. 67; Ward v. Joslin, 186 id. 142; Close v. Potter, 155 N. Y. 145; Leighton v. Knapp, 115 N. Y. Supp. 1040.
In the case of Richmond v. Irons, 121 U. S. 27, the action was brought by a creditor of a national bank, charging that the president of the bank, under cover of a voluntary liquidation, was converting its assets in fraud of the rights of creditors, and sought to set aside certain conveyances, the appointment of a receiver, and a decree charging the stockholders with their statutory, liability to creditors. It alleged the bank had gone into voluntary liquidation and placed its affairs in the hands of the president, for that purpose, who had thereafter settled a large amount of the indebtedness of the bank by giving notes' made by him as president and guaranteed by. him as such, and was using the assets of the bank in payment of its indebtedness. The court, among other things, said: “ Those creditors who made settlements after the bank was put into liquidation and received from the president in that settlement paper of the bank, or as in some cases the individual notes of Holmes himself, endorsed or guaranteed in the name of the bank, are not to be considered as creditors of the bank entitled to subject the stockholders to individual liability. ' The- individual liability of the stockholders, as imposed by and expressed in the statute, is indeed for all the contracts, debts and engagements of such association but must be restricted in its meaning to such contracts, debts and engagements, as have been duly contracted in the ordinary course of its business. That business ceased when the bank went into liquidation; after that there was no authority on the part of the officers of the bank to transact any business in the name of the bank so as to bind the shareholders except that which is implied in the duty of liquidation, unless such authority has been expressly conferred by the stockholders. * * * It is not within the power of the officers *670 of the hank without express authority, by such means to prolong indefinitely a liability on the part of the shareholders, which is imposed by the statute only as a means of securing the payment of debts by an insolvent bank, when it is no longer able to continue business, and for the purpose of effectually winding up .its affairs. This is the very meaning of the word liquidation.”
In the case of Schrader v. Manufacturers’ National Bank, 133 U. S. 67, a national bank had. gone into liquidation in September, 1873. Prior to that date it had become liable to a State bank as guarantor on sundry notes made by a third person and discounted for it by the State bank. In August, 1874, transactions took place between the maker of the note and the State bank and the person acting as president of the national bank,, whereby the maker was released from liability on the notes; but the president of the national bank attempted to continue, by agreement, the liability of the national bank on the guaranty. A judgment on the guaranty was obtained against the national bank; and, in a suit to charge the stockholders, the Supreme Court held that, not only might the liability of the stockholders be inquired into, but that the rights of stockholders could not be affected by the acts of the president after the bank had gone into liquidation.
In Ward v. Joslin, 186 U. S. 142, in an action to charge a stockholder under the provisions of the Kansas Constitution imposing liability on stockholders, the Supreme Court held that it was open for a stockholder to show that the judgment rendered against the corporation was not enforceable against him because the corporation had exceeded its powers in making the contract sued on, and cites with approval the case of Schrader v. Manufacturers’ National Bank, 133 U. S. 67, to the effect that the individual liability of stockholders for the contracts, debts and engagements of the corporation must be .“ restricted in its meaning to such contracts, debts and engagements as have been duly contracted in the ordinary course of its business.”
In the case of Close v. Potter, 155 N. Y. 145, our own Court of Appeals held that, where notes were issued in the *671 name of a corporation but not in the regular and ordinary course of business, but by trustees who had no right to act by reason of having parted with their stock, and at a meeting not duly notified, and as a scheme on the part of those acting as officers of the corporation to saddle its liability upon its stockholders and in that way to make good claims of their own against the corporation, the stockholders did not become liable, " as they were not acting within the scope of their power as agents and officers of the company, and as the representatives of the stockholders.”
In the case of Leighton v. Knapp, 115 N. Y. Supp. 1040, the court said: “All corporate acts which the legislature has not authorized, remain prohibited by the common law and stockholders are only liable for such debts as the association is expressly authorized to contract.”
The rules of law laid down and enunciated in the above cases, so far as we have been able to discover, have nowhere been questioned. They are founded in common sense and supported by the best of reasons.
Corporate officers are but the agents of the corporation and, in a sense, of the stockholders, whose capital is invested in the enterprise. They get their authority to act and bind the corporation and its stockholders from the statute which authorizes the corporate existence. When the directors or officers of a corporation go beyond the powers and authority conferred, they cease to represent the stockholders, and their acts ought not to create any liability on the stockholder for such ultra vires transactions.
With these principles of law clearly in mind, we proceed to the consideration of the question as to whether the indebtedness upon, which a recovery is here sought against the stockholders of the Metropolitan Bank falls within the condemnation of law as contracted ultra vires, and outside the ordinary and usual business of the bank.
Whatever indebtedness exists (saving the indebtedness upon the $50,000 note hereinafter separately considered) was created pursuant to, and as a result of, carrying out the terms of the liquidation agreement of August 10, 1901. The making of the liquidation agreement was certainly outside *672 of the ordinary course of business of the Metropolitan Bank. We think it will appear that it was equally beyond the power or authority óf the board of directors of the Metropolitan Bank to make it — a clearly ultra vires transaction. If an ultra vires transaction, then it was of necessity one outside the ordinary and usual course of business. The one proposition is involved in the other.
We look in vain in the Banking Law of the .State for any express authority empowering the directors of a State bank to make any agreement for the liquidation of a bank. The statute provides for a careful supervision of the affairs of State banks by the Banking Department of the 'State. The Banking Law of 1892 (now incorporated in the Consolidated Laws, chap. 2, § 18) in substance provides that, if the capital of a banking corporation shall be impaired, or if it shall refuse to submit its books to the inspection of any examiner, the Superintendent of Banks shall communicate such facts to the Attorney-General, and an- action to procure a judgment dissolving the corporation may be maintained.
Section 19 of the act provides that, when any bank has violated its charter, or is conducting its business in an unsafe or unauthorized manner, or if its capital is impaired, or if such corporation shall suspend payment of its obligations, or if the ¡Superintendent shall have reason to conclude that the bank is in an insolvent or unsafe condition to transact business, or that it is inexpedient for it to continue business, he may take possession of all its property and retain possession until it shall resume its business. He is authorized to liquidate its affairs as thereinafter provided and convert its assets into money. He may declare and pay dividends to creditors; and,, whenever the Superintendent shall have paid each and every depositor and creditor of the corporation the full amount of their claims, he " shall call a meeting of the stockholders of such corporation. * * * ” and “ at such meeting the stockholders shall determine whether the superintendent shall be continued as liquidator and shall wind up the affairs of such corporation, or whether an agent or agents shall be elected for that purpose. * "x" * In case it is determined to appoint an agent or agents to' *673 liquidate, the stockholders shall thereupon select such agent or agents by ballot,” etc.
The important things to note in connection with this section is that the right of choosing the liquidator of the affairs of a bank is not vested in the directors but in the stockholders.
By section 35 of the Banking Law, the appointment of a ■ receiver of a banking corporation is provided for on application of the Attorney-General.
By section 66 of. the law, the general powers of banks are defined; and the section provides that, in addition to the power conferred by the general and stock corporation laws, every bank shall'have power: “ 1. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of this chapter.”
Again it will be noted, in connection with this section, that the powers and authority conferred upon banks acting “ by its board of directors ” relate exclusively to the conduct of the affairs of the bank as a “ going concern.” Ho authority appears to be given the board to wind up the affairs of the bank, or to determine when it shall go into liquidation.
On the other hand) the ninety-ninth section of the act expressly provides that “ The stockholders may at any time direct that it he closed for the purpose of winding up its affairs ” and contains provisions as to the method to be pursued in the premises.
By the Code of Civil Procedure, section 2419 (now § 170 of the General Corporation Law), it is provided that a - majority of the directors of a corporation, having the management of its affairs, may, upon discovering that the stock and effects and other property are insufficient to pay *674 its .demands, present a petition to the Supreme Court praying for the final dissolution of the corporation. But no .decree dissolving the corporation is to be made in such a proceeding, save upon an order to show cause and service upon each stockholder and creditor at least ten days before the hearing. ■ Here, again, stockholders are to be consulted.
It is apparent, therefore, that the statutes of this State contain full and carefully considered provisions for winding up the affairs of corporations; and nowhere in those statutes is to be found any express provision authorizing the directors to make any agreement for the liquidation of the company, or to make any transfer of the assets for that purpose.
On the other hand, the right to determine whether a corporation shall go into liquidation very largely rests with the stockholders. The fair and legitimate inference to be drawn is that, where the privilege, and right of determining whether a corporation shall go into liquidation, and who shall act as liquidators, is given by statute to the stockholders, that right by implication is withheld from the directors. Indeed, by section 10 of the General Corporation Law, it is enacted that no corporation shall exercise any power not given by law, or not necessary to the exercise of the powers so given. There are good and substantial reasons why the right to determine whether a banking corporation shall go into liquidation should be given to the body of stockholders, and not to the directors. It is the stockholders’ money which is invested in the bank. They are the persons concerned and affected by the decision. If the capital is impaired, they are the ones who may, if they see fit, make the impaired capital good. They may think it for their own financial interest, as well as for the interest of creditors, to make good any impairment and continue the operations of the bank. The directors are, in a sense, but the agents and representatives of the stockholders. In this case the directors of the Metropolitan Bank made the liquidation agreement of August 10, 1901, with The German Bank. In so doing the action was taken by them of their own motion, without calling any meeting of the stockholders of the bank, or submitting to them the proposed action. It was'not subsequently *675 sanctioned or ratified by any vote of the stockholders. In so doing, we are of the opinion the directors clearly exceeded their powers and authority.
A very analogous case was decided by Mr. Justice Leventritt in Garrett Co. v. Morton, 35 Misc. Rep. 10. The question arose upon a demurrer to the plaintiff’s complaint, and the court held that, where it appeared that the board of directors of an insolvent fire insurance company having creditors passed a resolution to reinsure its risks, liquidate its affairs, or sell a majority of its stock, and thereafter accepts a proposition from another corporation to buy a majority of its stock and liquidate its affairs, the agreement was void as against public policy, as a scheme to annihilate the fire insurance company without dissolution proceedings, as required in such case by the Insurance Law. Justice Leventritt, in his opinion, said, among other things: “•So far as the directors of the Traders’ Company were concerned, I am of the opinion their action was illegal, not merely in the sense that the contract was unauthorized or beyond the legal capacity of the corporation, but that it was void as against public policy. Bath Gas Light Co. v. Claffy, 151 N. Y. 27, 35. It may be conceded at the outset that a purely private corporation has the right when its business has become unprofitable to discontinue operations for the purpose of protecting its shareholders (Skinner v. Smith, 134 N. Y. 240; Denike v. N. Y. & R. Lime & Cement Co. 80 id. 606), and that if resumption would be impossible or impracticable it would even become their duty to institute legal proceedings for the dissolution of the corporation. Jameson v. Hartford Fire Ins. Co., 14 App. Div. 380, 385. But whether or not a strictly private corporation without larger relations to the general public may, in the event of its reaching a non-paying basis, accomplish practical destruction by its own act (People v. Ballard, 134 N. Y. 269, 294; 136 id. 640), I hold that this company could not — and that the statutory method provided where dissolution became imperative was and is exclusive.”
This case was carried to the Appellate Division, and the judgment of the court below sustaining the demurrer was *676 reversed (65 App. Div. 366) not on the ground that the law as enunciated by the court below was not the law, but upon the ground that, reading the complaint as a whole, it did not warrant theo construction or the inference of an intention on the part of the directors to terminate the existence of the corporation in some unlawful way; but, at most, only an allegation, in substance, that the directors acting as agents of the stockholders negotiated a sale of a majority of the shares, whereby the control of the company and its affairs were put into the hands of the plaintiff.
There appears, therefore, no substantial disagreement between the Appellate Division and the lower court as to the law, but merely as to the conclusions of fact to be drawn from the pleading before the court for construction.
The liquidation agreement of August 10, 1901, practically terminated the existence of the Metropolitan Bank. If it did not terminate its corporate existence, it terminated its existence as a going bank and rendered it impossible for it to resume business. It recites that its officers and board of directors have thought it desirable that the bank should go into voluntary liquidation and thereby avoid the expenses incident to a receivership, and that The German Bank is willing to undertake such liquidation. It then pledges all its assets, of every name, as security for the money to be advanced by The German Bank to pay off depositors of the Metropolitan Bank. The Metropolitan Bank is to take no further deposits, and agrees so far as possible to secure to The German Bank such accounts kept by the Metropolitan Bank as shall be deemed desirable. It further provides that, in case'a receiver shall be applied for, The German Bank shall have the right to nominate the receiver, and such receivership shall not be applied for without its consent.
The very meaning of the word " liquidation ” implies the winding up of the affairs of a corporation. Ho more effectual method of ending the existence of a bank than that employed in this case could be devised.
The directors of a corporation have no power, by their own acts, to end the corporate existence of the company whose affairs they are chosen to manage. The whole matter *677 was up for consideration by the Court of Appeals in the case of People v. Ballard, 134 N. Y. 269.
In that case the trustees of a corporation transferred all the property of a corporation, organized under the Manufacturing Act of this State, to a corporation organized, at the time, under the laws of the State of California, for the purpose of carrying on the business theretofore conducted by the defendant and of taking title to its assets. This was done with the approval of stockholders holding a majority of the stock, but without the consent of the stockholders holding a large number of shares, and against the protest of some of them. The action was brought by the Attorney-General, in-the name of The People, against the corporation and its trustees, to compel the latter to account for their official conduct in the management and disposition of its property. It was held the transfer was invalid, and the fact that the trustees acted in good faith did not validate the transaction and transfer. Discussing the rights and powers of the trustees to terminate its existence, the court said: “A corporation is purely artificial, having no natural or inherent power, but only such as its charter confers. The charter of the corporation in question was the statute under which it was organized. Upon filing the certificate of incorporation it came into existence with power to do only that which is expressly or impliedly authorized by the statute. It had no power to act except through its trustees, who were authorized to manage its ‘ stock, property and concerns,’ and a majority of whom were required to be citizens of this state. (Laws of 1848, chap. 40, as amended by Laws of 1869. chap. 26'9). While they were authorized to conduct its affairs, they were not authorized to terminate its existence, although, under special circumstances, the court could dissolve it upon their application. (Code of Civ. Pro., sec. 2419). A corporation cannot cease to exist of its own will. Its life continues until either the charter period has expired or the court had decreed a dissolution. The law made it and the law only can put an end to it. As it cannot take its own life directly, it cannot do so indirectly, for that would be a fraud upon the law and against public policy.
*678 By the transaction complained of the defendant company was stripped of all its property and thus prevented from going on in business and deprived of all _ means of carrying-into effect the object of its existence. While a corporation may sell its property to pay debts, or to ca-rry on its business, it cannot sell its property in order to deprive itself of existence. It cannot sell all its property to a foreign corporation organized through its procurement, with a majority of non-resident trustees, for the express purpose of stepping into its shoes, taking all its assets and carrying on its business. That would be the practical destruction of -the corporation by its own act, which the law will not tolerate. Whether the process by which it was sought to-convert the Hew York corporation into a California corporation is called reorganization, consolidation or amalgamation, ' it was the exercise 'of a power not delegated and w'as void.” See also Schwab v. Potter Co., 194 N. Y. 411; Hitch v. Hawley, 132 id. 212; Jacobus v. Diamond Soda Water Mfg. Co., 94 App. Div. 368; Matter of Timinis, 200 N. Y. 177. .
The Banking Law and the general statutes have prescribed the methods of winding up the affairs of a bank. “ The method of effecting corporate dissolution, when prescribed by statute, as in this State, is exclusive/'’ Hitch v. Hawley, 132 N. Y. 217; Ver Plank v. Mercantile Ins. Co., 1 Edw. Ch. 84.
Wo are constrained, in view of the cases and considerations stated above, to hold that, in making the liquidation agreement, of . August 10, 1901, the directors of the Metropolitan Bank exceeded their statutory authority; that the agreement must be condemned as an ultra vires transaction ; that any indebtedness of the Metropolitan Bank incurred pursuant to the agreement is not one for which the stockholders of the bank became or are liable.
Before dismissing this branch of the case, it becomes our duty to refer to the decision in the case of Wyman v. Wallace, 201 U. S. 230, upon which the plaintiff’s counsel relies to sustain a right of recovery in this action. In that case, the American Rational Bank, in December, 1895, was in such financial condition that it became necessary for it to *679 provide for the payment of a large amount of deposits on or about January 1, 1896, for, though possessed of abundant nominal assets, it did not have sufficient cash to make such payments. In order to obtain the money necessary therefor, it made an agreement with the Union Bank, through their boards of directors, whereby the Union Bank agreed to assume payment of all the liabilities of the American Bank, receiving therefor cash and such bills receivable as it was willing to accept at par and without recourse. The difference between the amounts so received and the liabilities assumed was to be represented by three negotiable promissory notes of the American Bank, the payment of which was to be secured by a pledge of all the remaining assets to one Kimball as trustee. The contract was carried out, and the Union Bank moved into and took possession of the American Bank. On January 14, 1896, at an annual meeting of the shareholders of the American Bank, a resolution was adopted instructing the directors to take action looking to the liquidation of the hank. On February 25, 1896, another meeting of the stockholders was held and a resolution for a voluntary liquidation was adopted. The Union Bank paid all the obligations of the American Bank as agreed. 'Subsequently an action was brought by the holders of one of the notes given to the Union Bank against that bank, the trustee, Kimball, and the stockholders of the bank, on behalf of the plaintiff and all other creditors of the Union Bank, to wind up the affairs of the bank and to enforce the liability of the stockholders. It was held the action was maintainable, and the judgment was affirmed by the Supreme Court.
Without pointing out the difference between the provisions of the Rational Banking Act and the Banking Law of the State of Rew York, the Wyman case, in our opinion, is distinguishable from the case in hand. The court said: “ The borrowing of the money by the American bank did not necessarily put it into liquidation. It had a large amount of assets, and if the real had equalled the nominal value of these assets, it would have been enabled, after discharging its obligation to the Union bank, to continue business. But, on an examination, the stockholders felt it was wiser to stop *680 at once. But that decision did not impugn the wisdom or tona fides of the transaction by which the money was ob-; tained to pay the pressing demands of the American bank ” (243).
The court further said: “All the stipulations and agreements made by the directors of the two banks were carried out in good faith; and with full knowledge of what had been done, the stockholders voted for a voluntary liquidation.”
It will, therefore, be noted that, in Wyman v. Wallace, the money borrowed was for the immediate, pressing requirements of the American Bank; that the agreement between the American Bank and the Union Bank did not necessarily put the American Bank into liquidation; whereas, in the case of the Metropolitan Bank now under consideration, the agreement with The German Bank was one expressly for the liquidation of the affairs of the Metropolitan. It terminated its existence as a going concern, provided for the discontinuance of the receipt of deposits and the securing to The German Bank the benefit of deposit accounts theretofore enjoyed by the Metropolitan.
In addition to this, in the case of the American Bank, the stockholders, at a meeting duly called, in effect ratified the previous action of its board of directors, and they determined to go into voluntary dissolution. Hone of these things were done in the case now under consideration for decision.
It is urged on behalf of the plaintiff that the stockholders of the Metropolitan Bank, or at least many of them, ratified the agreement with and transfer to The German Bank by the fact that some of the stockholders were also depositors in the Metropolitan Bank, and after The German Bank had taken possession of the assets of the Metropolitan Bank, received from and through The German Bank payment in full of the amount of their deposit. To put the proposition in another way it is claimed that, having received benefit under, the alleged agreement, they are estopped from now asserting that the contract with The German Bank was ultra vires and void.
The argument applies with even greater force to the di *681 rectors of the Metropolitan Bank who authorized the liquidation with The German Bank.
Corporations often enter into ultra vires contracts, and where they have received and retained the benefit of such illegal contracts are held liable thereon to the same extent as though such contracts were perfectly valid. In this case, if a stockholder of the Metropolitan .Bank sought to impeach the transaction with The German Bank and set aside the conveyance or pledge of its assets, the court would undoubtedly only grant such relief upon condition that The German Bank should be repaid for any advances made.
nevertheless, the question still remains whether any indebtedness to The German Bank resulting from such illegal or ultra vires contract is an indebtedness for which stockholders are liable. We do not think, because the transaction remained unimpeached, or because legal proceedings were not taken to set it aside, that it changed the nature of the transaction, or for that reason made it a debt secured by the statutory liability of the stockholders. The damage had been done. When the directors transferred the assets to The German Bank to be liquidated, they forever destroyed the credit of the Metropolitan Bank and rendered it impossible for it to again successfully resume business. We cannot see upon what principle of law a stockholder who was also a depositor, •by accepting payment of his deposit under such circumstances, is estopped in an action of this character from asserting the invalidity of the arrangement, or from asserting that any indebtedness so created was not one contemplated to be secured by the statute imposing a liability on stockholders. We think the cases cited and discussed in the earlier portion of this opinion are decisive on this proposition.
The judgment recovered against the Metropolitan Bank included a demand upon a certain promissory note for $50,-000, dated July 24, 1901, payable on demand with interest. This note represented money actually loaned and advanced by The German Bank on that day to the Metropolitan Bank. As security for the payment of this note the Metropolitan Bank transferred and pledged with The German Bank an amount of good commercial paper, more than sufficient in *682 amount and value to pay the $50,000 loaned. It is not contended in this action but that The German Bank did realize from the collateral so pledged more than sufficient to pay in full the $50,000 note in question.
This loan of $50,000 of July 24, 1901, was, however, followed by the making of the liquidation agreement of August. 10, 1901. The German Bank thereupon, when the collateral originally pledged as security for the $50,000 note was realized upon, instead of applying the sum so received in payment of the note in question, credited the .Metropolitan Bank with the amount in the general account with them. In other words, the money realized from this collateral was applied in reduction of the alleged general indebtedness of the Metropolitan Bank, and not to the payment of the original note for $50,000. There is no question raised by any of the defendants that the money represented by this $50,000 note was actually advanced, or that the stockholders would be liable for this indebtedness, if unpaid; but they contend that the note has, in fact, been paid, and the money realized from the collateral, in law and equity, should have been applied in extinguishment of that indebtedness. If this contention is sound, then it relieves the stockholders from any liability whatever in this action.
It is- very manifest that the stockholders of the Metropolitan Bank, being liable on the $50,000 note, and not for advances made subsequently to the liquidation •agreement, had an equitable interest in having the collateral given to secure that note devoted to that specific purpose. The liability of the stockholders for the payment of the note was not a primary but a secondary liability. They were only liable in the event the bank failed to pay, and then only after The German Bank had exhausted its remedies against the Metropolitan Bank. The stockholders stand somewhat in the relation of sureties on the indebtedness represented by the $5'0,(X)0 note. Moss v. McCullough, 5 Hill, 131; Miller v. White, 50 N. Y. 137. The German Bank had ample security for its payment from the principal debtor. The -rule is well stated in the American and English Encyclopedia of Law (Vol. 27, p. 516), in this way: “If a creditor, without the consent of *683 the surety, parts with or renders unavailable any security- or fund which he has a right to apply in satisfaction of the debt, the surety is exonerated or discharged to the extent of the impairment of its value. * * The creditor'is treated as a trustee of all securities in his possession, for the indemnity of the surety as well as for his own protection; and he is in equity bound to apply them to the advantage of both.”
The doctrine is supported by innumerable decisions by the courts in many 'States cited in the volume in question. (See p. 517, Vol. 27.) Among others cited are the following from New York: Hubbell v. Carpenter, 5 Barb. 520; Bixby v. Barklie, 26 Hun, 275; Wheelright v. Depeyster, 4 Edw. Ch. 232; Griswold v. Jackson, 2 id. 461; Hayes v. Ward, 4 Johns. Ch. 123; 8 Am. Dec. 554; Cheesbrough v. Millard, 1 Johns. Ch. 409; 7 Am. Dec. 494.
This alone would seem decisive of the questions here involved; hut we might add that, where collateral has been given for a specific debt, it must be applied to the payment of that debt, and cannot, without consent, be applied on a general indebtedness. Wyckoff v. Anthony, 90 N. Y. 442; Duncan v. Brennan, 83 id. 487.
The plaintiff contends that- the liquidation agreement, made August 10, 1901, conferred authority and consent to make any application The German Bank thought best of the collateral to the $50,000 loan. This instrument contained no reference whatever to the $50,000. Of course it purported and, as far as possible, did undertake to pledge to The German Bank any equity the Metropolitan had in the collateral in question. It did not, however, expressly or impliedly, authorize the diversion of the collateral to the payment of the general indebtedness; and The German Bank, even with such an assent, if given, as against the stockholders, had no right to apply it to other than th-e payment of the $50,000 note. We, therefore, hold that, as matter of law and equity, the $50,000 note must be deemed to have been paid and discharged. This, of course, does not change the amount of the general indebtedness, but does operate to discharge the only *684 indebtedness for which we deem the stockholders originally liable.
There are other good and-sufficient reasons, in the opinion of the court,' why this action cannot be maintained.
The defendants strenuously contend that there is implied in the liquidation agreement of August 10, 1901, no promise of repayment of any of the moneys advanced by The German Bank to pay the depositors of the Metropolitan. There is no express promise in the instrument for repayment, and such promise of repayment as exists must be spelled into it by implication of law.
It is argued on behalf of the defendants that the agreement, when read in the light of the surrounding circumstances, permits of no such implied promise. It is urged that by the transaction the Metropolitan Bank had divested itself of every particle of its property by placing it in the hands and control of The German Bank; and that it was clearly not the intention or purpose of the parties that The German Bank should have any claim over against the Metropolitan Bank, or any right of recovery by way of judgment against it, inasmuch as it was apparent that nothing could be realized by virtue of such a judgment against a corporation wliich had already turned over to it all its assets, the conversion of which into money had already been provided for in the manner specified and pointed out in the liquidation agreement. It is, therefore, argued that it was the intention of the agreement that The German Bank should look solely to the assets transferred for reimbursement for the advances to be made in paying off depositors; that the only possible end to be gained by importing an obligation of repayment would be a possible remedy over against the stockholders for the indebtedness of the bank.
This contention might be important in determination of 0 the true meaning and purport of the agreement in question. The liquidation agreement seems to have contemplated the possibility that the assets pledged might.not be sufficient to repay to The German Bank the advances to be made. By the “ Eleventh ” clause of the instrument, it was agreed that the Metropolitan Bank should procure and deliver to The German *685 Bank “ a proper guaranty of certain of its directors and stockholders against any and all loss which it may in any Avise sustain by reason of any advance by it made pursuant to this agreement. Ho such guaranty shall render any one director liable for the engagements of another nor for more than the par value of his stock.”
■Such written guaranty was, in fact, executed and delivered to The German Bank. It is asserted that such guaranty of the directors was an express contract to protect The German Bank against loss, and that the law will not imply a promise as a substitute for, or in addition to, the express contract of the parties.
We are unable to concur in the contention that the giving of the guaranty in question is to be deemed accepted by The German Bank as a substitute for the personal liability of the Metropolitan Bank, if one in fact was created. We are accordingly remitted to an examination and study of the instrument itself to ascertain the real intention of the parties.
It is undoubtedly true that the use of the word “ advance ” or “ advances ” does not necessarily imply a promise of repayment. Northwestern Mut. Life Ins. Co. v. Mooney, 108 N. Y. 118; Schlesinger v. Burland, 42 Misc. Rep. 209. nevertheless, whether a covenant of repayment for money advanced is to be implied or not is to be ascertained from a study of the whole instrument. As was said in the case of Northwestern Life Ins. Co. v. Mooney (p. 126) : “ The particular contract must govern the rights of the parties.” Turning then to the liquidation agreement and examining it in the light of all the circumstances and assuming, for the purposes of this discussion, that the liquidation agreement is for all purposes a valid contract, free from any defects as being ultra vires, we are of the opinion that the contract implies a promise of repayment. The whole instrument apparently anticipates that ultimately The German Bank was to be repaid in full for all its advances, expenses and for its services in the premises. The question remains, however, as to when such repayment was to be made. Had The German Baidc the legal right to demand repayment of each advance immediately after making it? When it *686 paid off a depositor had it a legal-right to demand and recover for that particular advance? And so in succession for each subsequent advance as made from time to time ? Clearly this was not the intention of the parties. The agreement was for a “ liquidation ” of the affairs of the Metropolitan Bank. That is the substance and declared purpose of the instrument. Webster defines to go into liquidation as “ to turn over to a trustee one’s assets and accounts, in order that the several amounts of one’s indebtedness may be authoritatively ascertained and that the assets may be applied toward their discharge.” See Richmond v. Irons, 121 U. S. 27.
The German Bank was to convert and realize on the assets as quickly as possible, and apply the money so realized as it came in from time to time. But we are of the opinion that it was the purpose and intention of the agreement to impose a personal liability on the Metropolitan Bank stockholders only for such deficiency as might exist after all the assets pledged had been realized on and applied toward the -payment of the advances made. Until that had been done, The German Bank had not done what it agreed to do. Until that had been done, The German Bank had not earned the $20,000 agreed to be paid for its services in liquidating the affairs of the Metropolitan Bank. Until that had been done, the sureties on the written guaranty against 1-oss given The German Bank did not become liable, nor could the extent of their liability be ascertained.
Therefore, we are of the opinion that the liquidation agreement is to be construed, at most, as only giving The German Bank a right of action to recover from the Metropolitan Bank such balance as might -exist after all the assets pledged had been converted and applied in payment of the advances made.
If this construction of the liquidation agreement is correct, then certain important consequences flow from it, in so far as the liability of the stockholders is concerned, because the indebtedness in favor of The German Bank, if one arose, was not one to be paid within two years from the time contracted, as required by section 59 of the Stock Corporation *687 Law, in order to make stockholders liable. The section in question provides that “ no stockholder shall be personally liable for any debt of the corporation not payable ivithin two years from the time it is contractedSection Yl of the Banking Law is to be construed in connection with section 59 of the Stock Corporation Law. Hirshfeld v. Fitzgerald, 157 N. Y. 166.
It' is true that the liquidation agreement of August tenth is silent as to the time within which the liquidation of the Metropolitan Bank is to be completed and its affairs wound up. It is simply stipulated by the fifth paragraph of the instrument that “ in the management of the property * * and the conversion of the assets, due diligence shall be used to make the conversion as rapidly as it can he done without undue sacrifice.”
It does not appear what period of time would be necessarily required to make the conversion. It does appear, as matter of fact, that the conversion was not completed until long after two years had expired after the making of the liquidation agreement.
The judgment against the Metropolitan Bank was entered dune 11, 1903. There was received, in cash, and credited on the judgment cash receipts from dune 11, 1903, to December 21, 1904, $38,66Y.20. The German Bank then went into the hands of a receiver, and the receiver of The German Bank, as per report dated December 18, 190Y, gives a further credit of $3,459.36 for cash received by him. The Assets Realization Company then acquired the interest of The German Bank in the judgment and claim, and credits as net cash collected from the property of the Metropolitan Bank to date $34,112.50; making a total realized from such assets since the entry of the judgment in question, $Y5,638.96, stretching over a period of eight or nine years. So, as a matter of fact, this agreement was not performed within two years.
Assuming, for the sake of argument, however, that it were possible, by the exercise of diligence, to have converted the assets and ascertained the deficiency, if any, within, two years from the making of the liquidation agreement, and *688 that the agreement was perfectly valid in law, so that no question as to whether it was ultra vires or outside of the ordinary course of business is in the case, nevertheless, we are of the opinion that the personal liability of stockholders would not attach to any indebtedness created under it, because such indebtedness was not " payable luithin two years ” from the time it was contracted, as prescribed by the statute.
We have been unable to discover any decided case where the precise point has been passed upon by the courts, but certain general principles of interpretation of statutes of this nature, when applied to the facts, we think are decisive of this case. It is a general rule that a statute which imposes upon the stockholders of a corporation a personal liability for the corporate debts must be construed strictly; it is in derogation of the common law, and cannot be extended beyond its literal terms. Chase v. Lord, 71 N. Y. 446; Lowry v. Inman, 46 id. 119; Barnes v. Wheaton, 8 Hun, 80.
It is not sufficient for the statutory liability to attach that the debt may be payable within two years, but it should affirmatively, or by necessary implication, appear that the debt; by its terms, is payable within two years. It was the clear policy of the statute to conform the statutory liability to a limited class of indebtedness, namely, those payable within two years, for one reason, at least, that the liability of stockholders might not be indefinitely postponed. If the other construction were to be placed upon the statute, ' that the fact that a debt might possibly become due and payable within two years made the stockholders liable, the liability would attach to a class of indebtedness which would not mature at any definite future time, which we think clearly against the policy of the law.
The statute against the suspension of the power of alienation of property provides against the suspension of the right of alienation for a period longer than that of two lives in being at the time of the creation of the suspension. The courts hold that a possibility, at the creation of the limitation, that the event upon which it depends may exceed in time the authorized period, is fatal to it. Jennings v. Jennings, 7 N. Y. 547; Schettler v. Smith, 41 id. 328; Tiers v. *689 Tiers, 98 id. 568; Cross v. United States Trust Co., 131 id. 330; Sawyer v. Cubby, 146 id. 192; Fowler v. Ingersoll, 127 id. 472.
Reasoning from analogy, it may well be asserted that where, by the terms of a contract, the debt resulting therefrom may not fall due and be payable within two years from the time it was contracted, stockholders are not to be held personally liable therefor. And such is our conclusion when the rule is applied to any indebtedness resulting from the liquidation agreement of August 10, 1901.
We might add that this also brings us back to the proposition that this indebtedness was not incurred in the ordinary course of business.
It should be noted in this connection that the judgment recovered by The German Bank against the Metropolitan Bank was one not only for the advances claimed to have been made, but also included a recovery for $20,000 for services, rendered under the liquidation agreement, in liquidating the bank. It is very manifest that The German Bank had not at that time earned the money and was not entitled to payment therefor until it had, in fact, liquidated the bank, and finally converted all the assets pledged, and applied them to the payment of the advances made. It condemns the judgment as prematurely obtained, in any event.
It is further contended by the defendants that, when the liquidation agreement was executed and The German Bank took possession of the assets of the Metropolitan Bank, there was a practical dissolution of the Metropolitan Bank, and the defendants ceased to be stockholders in it; and that, therefore, this action cannot be maintained, because not brought within two years from the time they ceased to be stockholders, as required by section 59 of the Stock Corporation Law. The liquidation agreement was made August 10, 1901, and this action was begun on or about the 27th day of July, 1905.
The defendants cite in support of the proposition advanced the cases of Hollingshead v. Woodward, 107 N. Y. 96; Bruce v. Pratt, 80 id. 379; Walton v. Coe, 110 id. 109; *690 Brandt v. Benedict, 17 id. 93, and Webster v. Turner, 12 Hun, 264.
We think none of the cases above cited have carried the proposition to quite the extent the court is now asked to go in this case. When the liquidation agreement was made, there is every reason to believe that the directors of the Metropolitan Bank, as well as the officers of The German Bank, thought the assets of the bank were more than ample, not only to .pay all depositors, but also to pay something’ to the stockholders. The nominal book values of the assets pledged bo The German Bank exceeded the amount of the liabilities plus the amount of the capital stock; and, while a certain percentage of shrinkage was naturally to have been expected, I imagine no one anticipated that the shrinkage would be so great as actually developed. There remained a very reasonable expectation that something would remain for the stockholders. The corporation had an expected equity in the assets after all indebtedness had been paid. Heitlier the stockholders nor the directors had wholly abandoned the affairs of the corporation. It is true there could have been no resumption of active operations as a bank, but there still remained, we think, a hope and prospect of saving something for the stockholders from the wreck. The president of the Metropolitan Bank was to be employed to assist in the conversion of the assets, and he, in fact, gave his time and services to the extent of his ability. The record title to parcels of real estate remained, for a time at least, in the Metropolitan Bank, subject to provisions of the liquidation agreement that the Metropolitan Bank would make valid transfers of the same' necessary to comply with the statute regarding the recording of instruments of conveyance. These formal conveyances were afterward made by the Metropolitan Bank. The board of directors of the Metropolitan Bank met from time to time and .passed resolutions touching the liquidation of the affairs of the bank and took official action.
These facts and circumstances differentiate this ease from those on which the defendants rely; and we would not be justified in holding, as matter of fact or of law, that by *691 virtue of the execution of the dissolution agreement the defendants ceased to be stockholders of the bank, and thereby this action was not instituted within two years from the time they ceased to exist as such.
There still remain many interesting questions of law raised in the briefs and upon the argument of this case, which might be discussed in this opinion. Especially is this true in reference to the liability of certain defendants, where defenses have been interposed peculiar to the individual defendant and not to all alike. We omit any discussion of such matters for the reason that, if the court is correct in the views already expressed on the main questions, there is no occasion for entering into a consideration of the remaining ones.
The plaintiff’s complaint is, therefore, dismissed; and judgment directed in favor of the defendants, with a separate bill of costs to such defendants as have appeared and separately answered.
Complaint dismissed,