CHARLES J. CLOSE, Respondent, *v.* EDWARD W. POTTER, Appellant.

1. CORPORATIONS — STOCKHOLDERS' LIABILITY. The personal liability of stockholders, as it theretofore existed under the Manufacturing Act of 1848 (Ch. 40), namely, until the whole amount of the capital stock of the corporation shall have been paid in and a certificate thereof filed and recorded, was preserved not only under the Stock Corporation Law of 1890 (Ch. 564), but also under the amended Stock Corporation Law of 1892 (Ch. 688), as to debts of the corporation incurred before its adoption.

2. STOCK CORPORATION LAW — PRESERVATION OF STOCKHOLDERS' LIABILITY. Although the saving and construction clauses of the Stock Corporation Law of 1890 (Ch. 564, §§ 71, 72), which had the effect of preserving under that law an existing liability of stockholders under the Manufacturing Act of 1848, were not incorporated in the amended Stock Corporation Law of 1892 (Ch. 688), yet the equivalent thereof was accomplished by their incorporation in the Statutory Construction Law of 1892 (Ch. 677, §§ 31, 32), which was enacted and approved simultaneously with the amended Stock Corporation Law, and continued the liability of stockholders theretofore existing into the new and amended law.

3. LIMITATION OF ACTION AGAINST CORPORATION PRECEDENT TO STOCKHOLDERS' LIABILITY. The exemption of stockholders from personal liability for debts of the corporation, under the act of 1848, "unless a suit shall be brought for the collection of such debt against such company within one year after the debt shall become due" (§ 24), was preserved as to a debt contracted prior to the taking effect of the Stock Corporation Law of 1890, and, as to such a debt, was not affected by the substitution of the words "two years" for "one year" in the latter act (§ 58).

4. RUNNING OF STATUTE NOT PREVENTED BY RENEWAL NOTES. The giving of renewal notes by the corporation does not operate to prevent the running of the statutory limitation upon stockholders' liability for the original indebtedness.

5. INVALID CLAIM AGAINST STOCKHOLDERS. Notes issued in the name of a corporation do not constitute valid claims as against its stockholders, when not issued in the regular or ordinary course of business of the corporation, but issued by trustees who had no right to act, by reason of having parted with their stock, and at a meeting not duly notified, and as a scheme on the part of those acting as officers of the corporation to saddle its liability upon its stockholders, and in that way to make good claims of their own against the corporation.

6. BONA FIDE HOLDER. The statutory cause of action for the enforcement of stockholders' personal liability is not governed by the rules controlling commercial paper; and *it seems* that the rules applicable to a

19

*bona fide* holder as against the maker are not available to a plaintiff seeking to enforce stockholders' liability, based upon a note made by the corporation.

7. QUESTION OF FACT. Proof that the holder of notes made in the name of a corporation knew that the corporation was insolvent and that the notes had been issued after such insolvency had become known, and that he was aware that the stock authorized by the corporation had not been fully issued and paid for, and that the notes were payable to the corporation and were transferred to himself without other indorsement than that of the corporation, is sufficient to raise a question of fact as to whether he is a *bona fide* holder.

*Close* v. *Potter*, 11 Misc. Rep. 729, reversed.

(Argued January 25, 1898; decided March 1, 1898.)

APPEAL from a judgment of the General Term of the late Superior Court of Buffalo, entered January 12, 1895, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank F. Williams* for appellant. Defendant's motion for dismissal of plaintiff's complaint at the opening of the trial, on the ground that under the statute in force at the time the action was commenced the complaint did not state a cause of action, should have been granted. (L. 1892, ch. 688; L. 1890, ch. 564; Const. U. S. art. 1, § 10; *Ochiltree* v. *I. R. R. Co.*, 21 Wall. 249; *Booth* v. *Campbell*, 37 Md. 522; Thompson on Stockholders, § 38; Cooley on Const. Lim. 287; Const. N. Y. art. 8, § 1.) The court erred in not granting the defendant's motion for a nonsuit on the ground that the plaintiff did not prove that the note on which judgment was obtained against the American Bit Brace Company was a valid note of the corporation. (*F. Nat. Bank* v. *C. W. W. Co.*, 56 Hun, 412; *Huntington* v. *Attrill*, 118 N. Y. 365; *C. Nat. Bank* v. *Colwell*, 132 N. Y. 250.) When suit was brought against the American Bit Brace Company, the debt had not fully become due, and judgment on the claim against the company was not properly obtained. Hence the

plaintiff cannot recover in this suit.  (L. 1848, ch. 40, § 24 ;
*Mason* v. *N. Y. S. M. Co.*, 27 Hun, 307 ; *R. M. Nat. Bank*
v. *Bliss*, 89 N. Y. 338 ; *Griffeth* v. *Green*, 129 N. Y. 517.)
The liability of the stockholders, including the defendant, as
to the greater part of this indebtedness, if not controlled by
the law in force at the time of commencing the action, viz., the
Stock Corporation Law of 1892, must be governed by section
24, chapter 40, Laws of 1848, and, therefore, all of the debt,
excepting $1,025, had outlawed before commencing this action.
(*Hardman* v. *Sage*, 124 N. Y. 35 ; *Parrott* v. *Colby*, 6 Hun,
55 ; 71 N. Y. 597.)  The defendant should have been allowed
to go to the jury upon the question whether there was not a
scheme to extend the time of payment of an indebtedness
which was outlawed so far as the stockholders were concerned,
and revive the same ; and also upon the proposition as to
whether Mrs. Gertrude E. Lee and the plaintiff were not put
upon their notice under all the circumstances connected with
the transaction to ascertain the *bona fides* of the notes in ques-
tion, and especially to ascertain whether the indebtedness
represented by said notes was such that the stockholders could
be held therefor, and, hence, were not protected by the law
merchant as holders of promissory notes for value before
maturity so far as the liability of stockholders was concerned.
(*King* v. *U. I. Works*, 11 N. Y. Supp. 603 ; *Throop* v. *H. L.
Co.*, 125 N. Y. 530 ; *Dickson* v. *Mayer*, 12 N. Y. Supp. 651.)

*Simon Fleischmann* for respondent.    The defendant's lia-
bility in this action must be determined by the provisions of
the Stock Corporation Law as it stood from May 1, 1891, the
time at which it went into effect, until May 18, 1892, when it
was amended.   (L. 1890, ch. 564, §§ 1, 57, 58, 70, 72, 73 ; L.
1892, ch. 688 ; *Close* v. *Beals*, 2 Misc. Rep. 1 ; 3 R. S. [8th
ed.] 1957, 1960, §§ 10, 24 ; *Troy W. M. Co.* v. *Saxony W.
Mills*, 4 Misc. Rep. 245 ; *People ex rel.* v. *Bell*, 4 N. Y. Supp.
869 ; *Bank of Metropolis* v. *Faber*, 1 App. Div. 341 ; *Ott-
man* v. *Hoffman*, 6 Misc. Rep. 56 ; *Bank of Metropolis* v.
*Faber*, 150 N. Y. 200 ; *Randolph* v. *Larned*, 27 N. J. Eq.

557; *Matter of K. C. S. Co.*, 13 App. Div. 50.) The amendment of the Stock Corporation Law in 1892, modifying the liability of stockholders, cannot affect the defendant's liability in this suit, as the new law did not go into effect until after the indebtedness in suit was incurred, and a construction relieving stockholders from liability on an existing contract obligation would be in violation of the Constitution of the United States and of the Statutory Construction Law of this state. (L. 1890, ch. 564, § 57; L. 1892, ch. 687, § 36; L. 1892, ch. 688, § 54; *Corning* v. *McCullough*, 1 N. Y. 47; *Story* v. *Furman*, 25 N. Y. 214; *Wiles* v. *Suydam*, 64 N. Y. 173; *Cochran* v. *Wiechers*, 119 N. Y. 399; *Rogers* v. *Decker*, 131 N. Y. 490; *King* v. *Duncan*, 38 Hun, 461; *Conant* v. *Van Schaick*, 24 Barb. 87; *Pfohl* v. *Simpson*, 50 How. Pr. 341; *Hawthorne* v. *Calef*, 2 Wall. 10; *Moss* v. *Oakley*, 2 Hill, 265, 269; *Allen* v. *Sewall*, 2 Wend. 327.) The notes issued by the company in the hands of plaintiff, a *bona fide* holder for value before maturity, were of the same force and effect as if they had been made by a person or firm payable to the order of a particular person and by the payee indorsed specifically to the holder. (2 R. S. [9th ed.] 1851, § 5; *Central Bank of B.* v. *Lang*, 1 Bosw. 202; *Howland* v. *Bates*, 20 N. Y. Supp. 373; *Plets* v. *Johnson*, 3 Hill, 112; 1 Daniel on Neg. Inst. § 812; *Cheney* v. *Stone*, 29 Fed. Rep. 900; *Wilson* v. *M. E. R. Co.*, 120 N. Y. 145.) The notes in suit were in themselves valid and binding obligations of the American Bit Brace Company, and, moreover, represented a valid indebtedness of the company to their full amount. (L. 1890, ch. 563, §§ 8, 20; L. 1848, ch. 40, §§ 3, 7; *W. & B. Co.* v. *Rochester & K. F. L. Co.*, 4 Misc. Rep. 570; *Donnelly* v. *Pancoast*, 15 App. Div. 323; *Hamilton T. Co.* v. *Clemes*, 17 App. Div. 152; *Hutchings* v. *St. L., etc., Co.*, 68 Hun, 33; *Rathbun* v. *Snow*, 123 N. Y. 343; *Hoag* v. *Lamont*, 60 N. Y. 96; *Grant* v. *Treadwell Co.*, 1 App. Div. 367; *Cone* v. *Empire P. Mills*, 12 App. Div. 314; *F. A. Bank* v. *F. S. & G. S. F. R. R. Co.*, 137 N. Y. 231; *Moss* v. *Averell*, 10 N. Y. 449.) The two $5,000 notes of the company were in

no sense renewals of the old Preston notes, and, if they were, it would not avail the defendant as a defense to plaintiff's claim in this suit.  (*Jagger Iron Co.* v. *Walker*, 76 N. Y. 521.)

BARTLETT, J.  This action was brought to charge the defendant, as a stockholder of the American Bit Brace Company, with the sum of $2,400, being the par value of the stock owned by him, on certain promissory notes held by the plaintiff issued by the corporation, upon the ground that the capital stock had never been paid into the company in full, or a certificate thereof filed as required by the statute.

The American Bit Brace Company was organized as a corporation in 1887 under the Manufacturing Act of 1848, with a capital stock of $50,000, divided into five hundred shares of $100 each ; 475 shares of the stock had been issued and paid for in cash, leaving 25 shares, amounting to $2,500, unissued. The defendant contends that he is not liable under existing statutes.

The Laws of 1848, chapter 40, § 10, provides that " All the stockholders  *  *  *  shall be severally individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made and recorded," etc.  In 1890 there was a general revision of the statutes with reference to stock corporations, which went into effect on the 1st day of May, 1891, in which the provision alluded to was, in substance, re-enacted and the statute of 1848 repealed.  (L. 1890, ch. 564, §§ 57, 73.)  It was, however, provided that " The repeal of a law or any part of it specified in the annexed schedule shall not affect or impair any act done, or right accruing, accrued or acquired, or liability, penalty, forfeiture, or punishment incurred prior to May 1, 1891, under or by virtue of any law so repealed, but the same may be asserted, enforced, prosecuted, or inflicted as fully and to the same extent, as if

such law had not been repealed." And further, "The pro-
visions of this chapter, so far as they are substantially the
same as those of laws existing on April 30th, 1891, shall be
construed as a continuation of such laws, modified or amended
according to the language employed in this chapter, and not
as new enactments." (Id. §§ 71, 72.) In 1892, by chapter
688, § 54, the Stock Corporation Law was amended so as to
provide that "The stockholders of every stock corporation
shall, jointly and severally, be personally liable to its creditors,
to an amount equal to the amount of the stock held by them
respectively, for every debt of the corporation, until the whole
amount of its capital stock issued and outstanding at the time
such debt was incurred shall have been fully paid."

This statute was approved on the 18th day of May, 1892,
and went into force simultaneously with the Statutory Con-
struction Law (L. 1892, ch. 677, §§ 31, 32), which is, in sub-
stance, the same as sections 71 and 72 referred to in the Laws
of 1890. Under the provisions of the act of 1892 stockhold-
ers are no longer liable to the creditors of the corporation
until the whole amount of the capital stock shall have been paid
in and a certificate thereof filed and recorded; they are liable
only until the capital stock issued and outstanding at the time
the debt was incurred shall have been paid in full. As we have
seen, $47,500 of the capital stock of the American Bit Brace
Company had been issued and paid for in full. The stock-
holders, therefore, would not be liable under the provisions
of this act if the debts of the corporation had been incurred
after the adoption of this provision; but it seems to be con-
ceded that the debts upon which this action is founded were
incurred prior to its adoption, and the question raised with
reference thereto is as to whether the liability of the stock-
holders as it existed under former statutes was continued
under the later enactment.

The liability of stockholders differs from that of officers
of a corporation who have neglected to file annual reports,
in that the latter is in the nature of a penalty. The statu-
tory obligation which a stockholder assumes becomes a part

of the contracts made by the company with its creditors until the corporation is so far organized and completed that its stock is subscribed for and paid in, at which time the statute relieves the stockholder from further liability. Until that time his relation is deemed contractual. (*Cochran* v. *Wiechers*, 119 N. Y. 399.) By referring to the saving clause incorporated in section 71 and the construction which we are required to give it under the provisions of section 72 of the Laws of 1890, referred to, it will be seen that the repeal of the former statute " shall not affect or impair any act done or right accruing, accrued or acquired, or liability, penalty, forfeiture or punishment incurred," and that provisions substantially the same shall be construed as a continuation of such laws, modified or amended according to the language employed. From these express provisions it would seem that the liability of the stockholders, under the act of 1848, was carried into and preserved under the provisions of the act of 1890, and the same construction must be given to the provisions of the act of 1892. It is true that sections 71 and 72 were not incorporated in and made a part of the amended provision of the Stock Corporation Law in 1892, but the equivalent was accomplished by incorporating these provisions into the Statutory Construction Law, which was enacted and approved simultaneously with the amendment referred to, and which, it appears to us, operated to continue in the new and amended law the liability of stockholders theretofore existing. We, therefore, conclude that upon this branch of the case the claims of the appellant cannot be sustained.

It appears that the American Bit Brace Company was managed by five trustees, and that in the latter part of the year 1891 the corporation was discovered by them to be hopelessly insolvent. Thereupon two of the trustees sold out their entire stock; Preston, the president, sold all of his with the exception of one share, and McComber, the secretary, all but two shares. As to Brady, the remaining trustee, the evidence is

silent.   On the 2nd day of January, 1892, a special meeting
of the board of trustees was held at which Preston, Brady
and McComber only were present.   At this time the company
was owing upwards of $50,000.   The accounts and bills
receivable were between $3,000 and $5,000, and the other
assets, consisting of the company's plant, stock manufactured,
patents and good will, were shortly thereafter sold for $7,500.
Of the notes of the company outstanding about $29,000 were
held by Preston, the president, his brother and uncle.   At this
meeting McComber moved that, "Whereas, The American
Bit Brace Company is indebted to William G. Preston, Wil-
liam I. Preston and Austin R. Preston for money loaned
upwards of $25,000, which indebtedness is secured by the
notes of the company, which notes are past due, and Whereas,
the company is not able to pay all of the said notes in full at
present; Resolved, That the company execute five promissory
notes each for the sum of $5,000, due respectively in four,
eight, sixteen, twenty and twenty-four months from January
2nd, 1892, with interest at six per cent, payable to the order
of the company, and that the said notes be delivered to A. R.
Preston, as agent of the company, with instructions to negoti-
ate the same, if possible, for the purpose of funding or taking
up the indebtedness above mentioned and spreading the same
over a period of time that will enable the company to take
care of the same out of its business, and that when buyers shall
be found for the said notes they shall be indorsed by the com-
pany and delivered to such buyers upon the surrender to the
company of the notes given to said William G. Preston, Wil-
liam I. Preston and Austin Roe Preston, aggregating, with
accrued interest, the sum of $25,000."   The motion was sec-
onded by Brady, and carried.   It will be observed that the
statement in this resolution, that the notes extend over a period
of time that will enable the company to take care of them out
of its business, was made with full knowledge of the corpora-
tion's insolvency.

It then appears that five promissory notes for $5,000 each
were drawn by the treasurer and countersigned by Preston,

the president, who took the notes as the agent of the company and delivered them to one Lee. Preston, in his testimony, frankly admits that he told Lee the condition of the company at the time the notes were turned over to him, and that it was not able to pay; that it was owing him some $30,000, but "I didn't feel I was in a position as a matter of law and a matter of sentiment to enforce that debt against the stockholders. I wanted to get it into the hands of third parties so they could enforce against the stockholders. I did not want to enforce against the stockholders. I had my doubts of my legal right to commence an action against the stockholders." Lee, with equal frankness, admits that he knew of the condition of the company, and did not think the notes would be paid in full, but depended to a large extent upon the liability of the stockholders. It appears that at this time Lee was upon the point of negotiating a transfer of interest in real property with one Close, with whom he had arranged to take $10,000 of these notes in return for that amount of Summit Park stock, and Preston had agreed with Lee to accept this stock. After this agreement Lee's wife drew her check in favor of the corporation for $10,000, which was delivered to the treasurer and deposited in the Third National Bank to the credit of the company. The treasurer then drew the company's check for that amount upon the bank in favor of Preston, who deposited the same to his account in the same bank, then drew his check thereon in favor of Lee for a like sum, who in turn deposited it in the same bank with the design, as Lee tells us, of having the checks take care of each other. Lee then passed the two notes for $5,000 each to Close, the plaintiff, who delivered to him the Summit Park stock, which was handed over to Preston, and Preston turned over to the company $10,000 of the old notes held by him. Shortly after the completion of this transfer one of the two notes held by Close matured. The other still had four months to run. Thereupon another special meeting of the trustees was held on the 7th day of May, 1892, at which only three of the trustees were present, and of which no notice had been given to the other trustees. At this meeting Close

surrendered the two notes held by him and accepted another note for $10,000 and accrued interest in place thereof payable in ten days. This note matured on the twentieth, and the action against the company was brought thereon on the 23d of May, 1892. Lee testified that he told Close, at the time of negotiating with him, the condition of the company, and that he did not consider it good for the notes, but thought that any amount the company did not pay the stockholders would be liable to make good as the stock had not all been issued or paid in, and under the then existing law stockholders could be held. Under the by-laws special meetings of the trustees could be called upon the written request of any trustee by written notice duly served on each trustee by the secretary, the business of the meeting to be confined solely to the special subject for which the meeting was called, and the affairs of the company were to be governed by a board of trustees, each of whom should be the holder of at least five shares of the stock of the company. It appears to be conceded that the original liability upon the notes held by Preston which were surrendered to the company was contracted prior to the taking effect of the revision of the law of 1890. If we understand the testimony of Mr. Preston correctly, it had all matured prior to the 23d day of May, 1890, except $4,800, and all except $1,025 of this sum had matured prior to the 23d day of May, 1891. It is true in another place he speaks of all but the $1,025 becoming due subsequent to May 23rd, 1891, but this is evidently a mistake, for this expression is immediately followed with the statement that there was still $4,800 to become due subsequent to May, 1890, which agrees with his prior statement upon the subject.

At the conclusion of the evidence the court, upon motion of the plaintiff's counsel, directed a verdict in his favor for the sum of $2,666. To this direction the defendant's counsel took an exception and asked to be allowed to go to the jury upon the questions, *first*, as to whether the plaintiff was a *bona fide* holder for value of the note; *second*, as to whether this was not a scheme on the part of Preston for the purpose of

reviving an indebtedness, which, so far as this defendant was concerned, was outlawed, with the exception of $1,025, and, *third*, whether it was not a scheme on the part of Preston to collect the debt, which he, being a director and president of the company, was not legally in a position to collect against a stockholder. He also asked the court to direct the jury to find that the notes were not proper, valid and legally authorized notes of the company, and that consequently the plaintiff could not collect from the defendant. The court declined the several requests of the defendant, to which he duly excepted.

Under the provisions of the statute in force prior to the revision of 1890 no stockholder was personally liable for the payment of any debt contracted by the company " which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall be brought against such company within one year after the debt shall become due." Under the revision of 1890 one year was changed to two years. The power of the legislature is undoubted to alter or amend the Statute of Limitations and apply it to existing liabilities. The Statute of Limitations is a statute of repose and affords protection against stale demands which may have been forgotten or are incapable of explanation by reason of the death or removal of witnesses. A man may not have any constitutional right to have a period fixed within which he shall be relieved from his liabilities or any vested right in any such time that may have been fixed by the legislature. This case is, however, quite different. A stockholder is not primarily liable for the debts of the corporation. It is only after the creditor has obtained judgment against the company and issued execution, which has been returned unsatisfied, that the stockholder becomes liable. As we have seen, his liability is contractual and secondary. His relation is in the nature of a surety. He undertakes to pay in case the creditor fails to collect of the company through an execution. The statute, as we have seen, provided that he should be liable only in case an action was brought against the corporation

within one year after the debt had become due. The stock-holder, therefore, undertook to guarantee the solvency of the company during that year, and not for any extended time. (*McMahon* v. *Macy*, 51 N. Y. 155–165.) The legislature could not change his contract, and evidently did not intend so to do in revising the statutes upon this subject, for, as we have seen, it is specially provided that the repeal shall not affect or impair any right accruing, accrued or acquired prior to the 1st day of May, 1891, but the same may be asserted or enforced as fully and to the same extent as if such a law had not been repealed. It is, therefore, apparent that the statute had run against the notes in the hands of Preston prior to the commencement of any action against the company, except as to the $1,025, or, at least, the jury would have been justified in so finding upon the evidence presented. It is said, how-ever, that the notes issued on January 2, 1892, were not renewal notes; that they were notes issued by the com-pany, payable to its order, and were delivered to Preston, as agent of the company, to be negotiated. This is true; but they were to be negotiated to raise money with which to take up the notes held by Preston, as is disclosed by the resolution of the trustees adopted at that meeting. It is also true that Mrs. Lee drew her check therefor, the company its check and Preston his check, making a circuit of checks, but no money passed ; none was intended to pass, for the checks were designed to take care of each other and were issued only after it had been arranged that the Summit Park stock was to be taken from Close and delivered to Preston. Upon this evidence the jury would have been justified in finding that the checks were a mere pretext to give color to the transaction; that the new notes were really intended to be and were in fact and law. renewal notes, and that their first legal inception was when they were transferred to Close for the Summit Park stock. If they were renewal notes they did not operate to prevent the running of the statute so far as the stockholders are concerned. (*Hardman* v. *Sage*, 124 N. Y. 25 ; *Jagger Iron Co.* v. *Walker*, 76 N. Y. 521.)

Again, it is apparent, or at least the jury might have so found, that these notes were not issued in the regular or ordinary course of business of the corporation; that they were issued by the trustees, who, under the by-laws of the company, had no right to further act as such by reason of the prior sale of their stock, and so far as the note upon which the action was brought is concerned, at a meeting of which certain of the trustees had neither notice nor opportunity to attend and be heard. In short, that it was a scheme on the part of those acting as officers of the corporation to saddle its liability upon its stockholders, and in that way to make good their own claims against the company. If this be so, they were not acting within the scope of their power as agents and officers of the company and as the representatives of the stockholders, but were acting for their individual interests, and consequently the new notes issued were not valid claims as against the stockholders.

It is claimed, however, that Close was a purchaser for value before maturity of the notes in question, and was, therefore, a *bona fide* holder. Assuming this to be the case, we do not see how it can affect the rights of the defendant. He was merely a stockholder; he was not the maker of the notes, and no action could be maintained against him thereon. The notes were made by the corporation, and were the evidence of a debt against it. In the hands of a *bona fide* holder the corporation could avail itself of none of the defenses alluded to. The plaintiff, as the holder of such notes, could avail himself of the rule governing commercial paper as against the corporation, but when he seeks to go behind the corporation and collect of a stockholder, he pursues a remedy given by the statute and is subject to the conditions imposed upon his right to recover. Those conditions are, that he be a creditor of the corporation; that his claim be established by judgment and a failure to collect upon execution, and that his action against the corporation be brought within the time prescribed by the statute. This cause of action is entirely independent, and is not governed

by the rules controlling commercial paper. This is the logical effect of the cases alluded to, holding that the giving of a promissory note by a corporation does not prevent the running of the statute, so far as stockholders are concerned, upon the original indebtedness. We are not, however, satisfied that the plaintiff was a *bona fide* holder. As we have seen, he knew of the insolvency of the company and that these notes had been issued after such insolvency had become known. He was aware that the issue of stock authorized by the corporation had not been fully issued and paid for. He knew that the notes made after insolvency were payable to the company and transferred to himself without other indorsement than that of the company. These facts were sufficient to warn him that the notes were not issued in the ordinary course of business and to put him upon inquiry as to their validity. It consequently became a question of fact for the determination of the jury as to whether he was in fact a *bona fide* holder.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except GRAY, J., absent.

Judgment reversed.