# Wytheville.

## ZEBULON VANCE NORMAN, RECEIVER OF THE BANK OF ROPER v. ROBERT F. BALDWIN.

June 13, 1929.

The opinion states the case.

*Mann & Tyler* and *H. S. Ward*, for the plaintiff in error.

*Williams, Loyall & Taylor* and *W. L. Whitley*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a motion brought to recover excess individual liability from a Virginia stockholder of an insolvent North Carolina bank.

The Bank of Roper was organized in 1906, and became insolvent in 1921, at which time there were outstanding 200 shares of stock of the par value of $20,000.00. Five shares had been subscribed for and was and is owned by the defendant, Robert F. Baldwin, a citizen of Norfolk, Virginia.

Section 237 of the Consolidated Statutes of North Carolina declares that stockholders, in such circumstances, shall be liable to the extent of the par value of their stock, in addition to the amount already invested in it. Section 239 goes on to provide that when a bank's assets are insufficient to discharge its obligations, an accounting may be had, "and the shareholders made parties defendant thereto," and that when a deficiency is adjudged to exist an assessment shall be made.

Section 240 authorizes the receiver to sue these stockholders both within and without the State, and declares that "the receiver may, within ten years after an assessment on the stock, institute civil actions against the stockholders to reduce the liability thereon to final judgment."

To this motion for judgment, filed November 9, 1927, the defendant pleaded both the three and the five year statute of limitations (Code Va. 1919, section 5810). An agreed statement of facts sets out that A. B. Litchfield was, on October 10, 1921, appointed receiver in the case of *Corporation Commission of North Carolina* v. *Bank of Roper*, by the Superior Court of Washington county, a court of general jurisdiction. Litchfield qualified and gave the required bond, and at the January term of that court, 1923, filed a petition

setting out that this defendant was the holder of five shares of stock, and asked leave to sue him and other stockholders whose names there appeared. At the same term of that court, he was authorized and directed to sue. The trial court was of opinion that the right to sue ran from the date of that order; that defendant's obligation was on an implied contract; that the three year statute applied, and dismissed the motion. This judgment is now before us on a writ of error.

The general rule is that while contracts are to be construed according to the *lex loci contractus*, they are to be enforced according to the *lex fori.* Wood on Lim. (4th ed.), section 8; Burks Pleading and Practice (2d ed.), page 389; *Patton* v. *Lumber Co.*, 171 N. C. 837, 73 S. E. 167.

To this general rule there is an exception now as universally recognized as the rule itself.

"Where the statute imposing the liability and creating the remedy does not itself limit the time within which an action to enforce it must be brought, but leaves the matter to be governed by the general statute of limitations, the laws of the forum will govern in determining whether an action brought in a State other than that by which the corporation was created is barred, since general statutes of limitations relate to the remedy and have no extra-territorial force. This rule does not apply, however, when the statutes of the State by which the corporation was created, and the liability is imposed, prescribe a special limitation for actions to enforce the liability. In such a case the statutes of that State govern, and they will be given the construction which they have received by the highest court of that State." 7 Fletcher's Cyc. Corp., pages 7452-3.

"Where by statute a right of action is given

which did not exist by the common law, and the statute giving the right fixes the time within which the right may be enforced, the time so fixed becomes a limitation or condition on such right, and will control, no matter in what forum the action is brought." 37 Corpus Juris, page 732.

"The reason upon which this line of decisions is based is that in the enforcement of a liability not existing at common law, and arising by virtue of a statute, the right, as well as the mere remedy, is involved, and that to the statute in question alone, as construed by the courts of the State of its passage, can resort be had, either in the matter of the ascertainment of rights arising thereunder, or remedies provided thereby. The statute itself prescribes just what right it gives, and it can likewise provide the remedy for its enforcement, and the time within which it shall be operative." *Brunswick Terminal Co.* v. *National Bank*, (C. C. A.) 99 Fed. 635, 48 L. R. A. 625.

The Supreme Court of the United States refused a writ of *certiorari* in the above styled case, 178 U. S. 611, 20 S. Ct. 1029, 44 L. Ed. 1215. See also, *The Harrisburg*, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358; *Northern Pac. Ry. Co.* v. *Crowell* (D. C.), 245 Fed. 668; Burks Pl. & Pr. (2d ed.), 389; 17 R. C. L. page 701.

This is not seriously questioned, but it is said that the statute law of Virginia provides otherwise, and we are cited to section 5825 of the Code of Virginia, 1919, which declares that: "Upon a contract which was made and was to be performed in another State or country by a person who then resided therein, no action shall be maintained after the right of action therein is barred either by the laws of such State or country or of this State." Plainly this statute has no application.

When the contract of subscription was made Mr. Baldwin did not reside in North Carolina, but in Virginia.

It is argued that any other construction would be inequitable in that a North Carolina subscriber, who afterwards moves to Virginia, would be better circumstanced than a Virginia subscriber who had always lived here. This may be true, but we have to take the statute as written. It is difficult to frame one that at all times and in all circumstances operates with exact equality. This has actually occurred. Mary A. Roper, a citizen of Norfolk, held property in North Carolina. She was also a stockholder in that bank and her property there located has been attached and sequestrated (*Litchfield* v. *Roper*, 192 N. C. 202, 134 S. E. 651), so that the net result of this is that one stockholder in Norfolk has had to pay and one has been set free. Of course, this has little to do with the issue before us, but only serves to show the difficulty in drafting laws which at no time discriminate between litigants.

No general statute of limitations acts extraterritorially. It must inhere in and attach to the right sought to be asserted, 37 Corpus Juris, page 735. It is also true that in the construction of State statutes we follow the courts of that State, though their enforcement under the guarantees of the Federal Constitution may continue to present open questions.

With this in mind, it is said that the North Carolina statute has been twice construed in North Carolina to be simply one of limitation and not a condition attached to the contract of subscription.

In *Long* v. *Bank*, 90 N. C. 405, the court said: "The three year statute of limitations (since changed to ten years) begins to run, against an action to enforce the

personal liability of stockholders of a bank under a
clause in its charter, from the date the bank suspends
specie payments."

Again, in the *Litchfield Case, supra,* it is observed:
"We must assume that the General Assembly acted
with deliberation and had good reason for extending
the limitation of actions for an assessment against the
stockholders of a bank from three to ten years."

Of course, broadly speaking, it is a statute of limita-
tions; it is that and something more—not a general
statute governing all implied contracts, but a special
one intended to apply only to stockholders of insolvent
banks into whose contract of subscription it is incor-
porated.

An examination of these North Carolina cases shows
that the court had no such distinction in mind as we
are called upon to make in the case in judgment, nor
was it necessary. The same conclusion would have
been reached and the same statement of the law there
made would have been unassailable, whether the limita-
tion had been regarded as general or special. To apply
any statement of the law intelligently, the facts to
which it is addressed are to be always remembered,
nor are we to presume that the Supreme Court of North
Carolina intended in this casual way to set aside a
rule so well established.

The Bank of Roper was chartered in 1906, and
the limitation at that time was three years. This con-
tinued to be the law until 1911, Laws N. C. 1911,
chapter 25 (C. S. N. C. section 240), when the statute
was changed and the time extended to ten years.
There is no constitutional bar to the extension of
statutes of limitation. Wood on Lim., 4th ed., sec-
tion 11.

These special statutes may be likewise extended,

subject to this qualification only: They cannot be extended beyond the limitation fixed when the debts to be paid were incurred. *Close* v. *Potter*, 155 N. Y. 145, 49 N. E. 686. Here it was changed in 1911, and the bank did not fail for ten years thereafter, at which time its liabilities were about $200,000.00 and its assets $6,000.00 or $7,000.00.

We are therefore of opinion that neither the three year nor five year Virginia statute applies, but that we are bound by the ten year period fixed in that of North Carolina.

There are two cross-assignments of error. First, it is said that this defendant was never made a party to the North Carolina proceeding under which the assessment was ordered; that no lawful summons was ever executed as to him, and that he never voluntarily appeared in the North Carolina court. In short, it is said that certain designated conditions declared by the North Carolina statute to be prerequisite to the right to sue have not been met.

It does not appear from the agreed statement of facts that he received any notice of what was done in 1923. It does appear that Litchfield was appointed receiver; that the bank was totally insolvent, and that he petitioned the court for right to sue the stockholders. This the court authorized and directed him to do.

In discussing the statute of limitations, we are told that the Supreme Court of North Carolina has decided that the statute of limitations began to run in 1923, and it is everywhere properly conceded that as a prerequisite therefor a valid assessment was necessary. This statement is made in the brief filed on behalf of Baldwin:

"It seems that counsel for appellant admits that the situation of Mr. Baldwin is the same as that of Mary A. Roper, who was the defendant in the case of *Litchfield,*

*Receiver*, v. *Roper*, cited heretofore. We again wish to direct the attention of the court to the decision of the Supreme Court of North Carolina in this case. It appears from the opinion of the North Carolina court in that case that it was held that the statute began to run as to Mrs. Mary A. Roper on January 10, 1923, to-wit: the date of the petition and order of the court entered at the January term, 1923, of the Superior Court of Washington county. This is undoubtedly the effect of this decision as the same was rendered in 1926, before the paper writing entitled 'Judgment,' and signed by Judge Daniel, and referred to by appellant as the order of July 15, 1927. If the statute began to run as to Mrs. Roper in January, 1923, and this is the decision of the Supreme Court of North Carolina in that case, it must necessarily follow that the statute began to run as to Mr. Baldwin at the same time. If counsel for appellant can point out any material difference between the status of Mary A. Roper in that case and Robert F. Baldwin in this case, we will submit further authorities upholding our contention. Until he does so his statement that the situation of Mary A. Roper 'was in this respect the same as defendant's,' constitutes an admission that under the North Carolina law the statute of limitations began to run January 10, 1923, and we need bother ourselves no further in establishing this fact."

It is further said in that brief: "It has been repeatedly held by the Supreme Court of the United States, that the construction of a State statute, given by the highest appellate court, is binding on all courts."

With all of this we are in accord. The Supreme Court of North Carolina must have been of opinion that all preliminary steps required by her statute had been met when it gave judgment against Roper.

By inference, at least, the Superior Court of Washington county thought otherwise. Litchfield died and Norman was appointed receiver to succeed him. He took up the question of these stockholders' liabilities, and at its July term, 1927, the Superior Court of Washington county entered an order which is in part as follows: "Motion in the above entitled cause came on before me this day by the receiver of the defendant bank. It is made to appear to the court that notice issued pursuant to an order of this court at its October term, 1926, to George W. Roper * * * and to Robert F. Baldwin, stockholders of the Bank of Roper, residing in the State of Virginia, city of Norfolk, requiring them to appear at the January term, 1927, and answer to the motion attached to said notice, which motion and notice is made a part of this finding. Upon the affidavit of W. L. Whitley, Esq., the court finds and adjudges that the notice served on him of July 11, 1927, is not sufficient in itself to bring the said stockholders into court in this cause, he not appearing to be counsel of the record in this jurisdiction. The court, however, leaves open the question of the effect of the notice given by the letters to the stockholders written by counsel for the receiver, Messrs. Mann and Tyler, dated July 8, 1927. But the court further finds and adjudges that the notice issued from this court of October term, 1926, served by the process officer of the city of Norfolk, was in all respects sufficient to bring the said stockholders into court and made them properly parties to this motion, and that the motion was duly continued from the January term, and is properly returnable by its successive continuances, and sufficient within itself to make the said stockholders parties, and that by virtue of the same, they are now duly and properly before the court." The order further

sets forth the assets and liabilities of this insolvent corporation and the necessity for a 100% assessment on its stockholders, and it was ordered. .The receiver ·was directed to take action against the Virginia stockholders. If the preliminary proceedings necessary to the maintenance of this action were not taken in 1923, they were taken in 1927.

Of course, what was done would not sustain a personal judgment against Baldwin, and none was entered. ▮▮ "Process from the tribunals of one State cannot run into another State, and summon parties there domiciled to leave its territory and respond to proceedings against them. Publication of process or notice within the State where the tribunal sits cannot create any greater obligation upon the nonresident to appear. Process sent to him out of the State, and process published within it, are equally unavailing in proceedings to establish his personal liability." *Pennoyer* v. *Neff*, 95 U. S. 714, 24 L. Ed. 565.

▮▮ The purpose of the North Carolina proceeding was merely to assemble .these stockholders that they might have an opportunity to protest against being sued at all if the facts warranted such a protest. Process from North Carolina does not run in Virginia, but it was sufficient to give notice of what was proposed to be done, just as service by publication would be sufficient. Certainly this is the construction placed upon this statute by the North Carolina courts which have twice held that the requirements of North Carolina, preliminary to actual suit, have been met, and we follow their judgment. Personal service of process is not necessary to make one party defendant to a suit, though it, or a voluntary appearance, is a prerequisite to personal judgment. No constitutional right has been violated, for it is in the Norfolk action, duly

brought, in which there was personal service of process on Baldwin, that personal judgment is asked for.

We are of opinion that the trial court was right in striking out this plea, numbered one.

The second assignment of cross-error rests upon the fact that the trial court struck out plea No. 2, which charges that Litchfield, the first receiver, failed to sue the directors of the Bank of Roper for negligence, etc., although ordered to do so by the court.

In *Corporation Commission* v. *Merchants' Bank and Trust Co.*, 193 N. C. 113, 136 S. E. 362, it was held that stockholders of an insolvent bank are not liable for assessment of double liability under C. S. Supp. 1924, section 219(a) and C. S., section 237, until tort liability of officers and directors for wilful mismanagement is determined, in view of C. S., sections 239, 240, since right of action against such officers and directors, unlike statutory liability of stockholders, was an asset of the bank, which must be determined to be insufficient before assessment is made.

Suit was promptly brought by Norman, the second receiver, but it was held that such rights as might have existed were barred by the statute of limitations. That is to say, this liability has been determined by final judgment of a competent court, and that is all that is necessary. If the first receiver was derelict in the performance of his duty, then his estate and his official bondsman may be liable. The failure of the present receiver to proceed against them is not assigned as a defense. This plea was also properly rejected by the trial court. To it this entire action was submitted.

For reasons stated, we are of opinion that plaintiff's claim is not barred by the statute of limitations, and that final judgment should now be entered against the defendant. It is so ordered.

*Reversed.*