**FINE AND SALZBERG, INC., Appellant.**

v.

**WESTERN AUTO SUPPLY COMPANY, a Missouri Corporation, Appellee.**

No. 75–2126.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1976.

Decided Nov. 30, 1976.

924

Howard I. Legum, Norfolk, Va. (Fine, Fine, Legum & Fine, Norfolk, Va., on brief), for appellant.

Conrad M. Shumadine, Richmond, Va. (David Y. Faggert, Kaufman, Oberndorfer & Spainhour, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The sole question on appeal from summary judgment in this diversity case is whether a California statute of limitations bars this action to recover payments of lighting and maintenance expenses allegedly owing under a lease of real property. The district court held the action time barred and granted summary judgment to the lessee, Western Auto Supply Company (Western Auto).

The parties agree that the law of the forum (Virginia) governs this procedural question. We agree with the district court that the Virginia borrowing statute, § 8–23 of the Code of Virginia, governs this case, and we are of opinion that the California four-year statute of limitations began to run at the expiration of the original lease, a time more than four years before this suit was initiated. We therefore affirm the judgment of the district court, if not its entire opinion.

Western Auto, the defendant below and appellee here, does business in California and Virginia, but is a corporation chartered under the laws of Missouri, where it maintains its principal office. On July 29, 1959, Western Auto leased a one story store in a shopping center in Montebello, California, from Neil Properties, Inc., a California corporation, whose principal office is in Los Angeles, California. The written lease required the lessee to mail rent payments to the lessor's Los Angles office, or "at the address or to whom lessor may designate in writing." Another provision required the lessee to pay, in addition to rental payments, its pro-rata share of the cost of lighting and of maintaining the common areas of the shopping center.

The lease was written to run for ten years, from February 1, 1960 to January 31, 1970. But before the lease term expired, Neil Properties, the original lessor, went into bankruptcy. In 1965, Neil's trustee assigned its lessor's interest in the lease, which came into the hands of Fine and Salzberg, a Virginia corporation with its principal office in Norfolk, Virginia.

Western Auto did not surrender possession of the property at the end of the ten-year term of the lease, but retained possession until June 1971, sixteen months after the lease expired.[1] Fine and Salzberg did not object and continued to receive rent on the property from Western Auto as a holdover tenant.

On March 17, 1975, more than five years after the lease expired on January 31, 1970, but less than four years after the lessee surrendered possession of the property, Fine and Salzberg brought this action in a Virginia state court to recover from the lessee payments for lighting and for maintaining the common areas. Western Auto, the lessee, removed the suit to the district court, and then submitted a motion for summary judgment, arguing principally that because the California four-year period of limitation on actions of this kind had run,

---

1. The lessor made no claim in the district court for payments of lighting and maintenance expenses after the 1970 expiration of the lease.

the Virginia borrowing statute, § 8–23 of the Code of Virginia, also barred suit on this claim brought in Virginia.

Section 8–23 reads as follows:

"Contracts made outside the State—

"Upon a contract which was made and was to be performed in another state or country by a person who then resided therein, no action shall be maintained after the right of action thereon is barred whether by laws of such state or country or of this State."

The pertinent part of the California statute of limitations is: "§ 337 [Written obligation: Four years] "Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing. . . ."

The underlying facts of this case are not in dispute. It is admitted that Neil Properties and Western Auto, the original parties to the lease, resided in California when they executed this lease. Fine and Salzberg states that Western Auto was also a resident of Virginia.

The district court found that California was the place where the contract was made because the last signature to the lease was there, which was the last event necessary to make the lease a binding contract. *Hogue-Kellogg Co. v. Webster Canning Co.*, 22 F.2d 384, 385 (4th Cir. 1927). It found that the contract was to be performed in California because the property was there, the lease was made there; the present dispute involved a California lease; and at least one party to the present dispute resided in California. It relied on *Humble Oil & Refining Co. v. DeLoache*, 297 F.Supp. 647, 651 (D.S.C.1969).

The district court next found that "person" meant any contracting party and that the requirement that the contract must be "made" by "a person who then resided" in California was satisfied by the residence of Neil, which was a domestic California corporation.

The district court thus concluded that the requirements of § 8–23 were met, and, under the statute, it applied the California

statute of limitations, § 337.2 of the California Code of Civil Procedure, and held the action time barred.

Fine and Salzberg argues that the district court should not have applied the Virginia borrowing statute because it says the lease was not "to be performed" in California. It takes the position that the provision in the lease providing that rental payments could be mailed to another place or person, if so designated by the lessor, contemplates performance outside California. We do not agree, and think the place of performance of the lease was in California. That is the rule as recited in *Humble Oil*, although *Humble Oil* was a case involving a contract to make a lease.

In the case before us, the real estate was located in California. The lease was made in California by a domestic California corporation and a foreign corporation which was a resident of California. The obligation to pay the rent arose out of a California lease involving California land. The rent originally was to be mailed to the lessor at its California address. Granted, that after the purchase of the property by Fine and Salzberg, the rent was mailed to Norfolk, we do not think that the mere change of place of payment of rent, although made permissible by the lease, is sufficient to remove the case from the general rule that a lease of real estate is to be performed at the place where the real estate is located. *Plaza Amusement Company v. Rothenberg*, 159 Miss. 800, 131 So. 350 (1930), is the case more nearly in point than any we have found. In that case, a lease of a building in Mississippi was for a term, and the monthly rental was by a series of notes executed in advance and made payable in New Orleans. While the holding of the case was that the law of Mississippi applied, the reasoning of the court obviously was that the mere fact that the rent was to be paid in New Orleans did not mean the performance of the lease was to be in New Orleans, and it accordingly applied Mississippi law. Following that reasoning, we are of opinion the lease in this case "was to be performed" in California. No aspect of

the performance of the lease on either side was to take place outside California other than the place of payment (or payee) of rent if designated in writing by the lessor.

■ Fine and Salzberg then argues another requirement of the statute is not met here. It says the borrowing statute does not apply to a corporation, such as Western Auto, with residences in both Virginia and California. It does not appear to argue that § 8–23 does not apply to corporations, but only that it does not apply when a corporation resides in several States at once, if one of those is Virginia.

The case of *Norman v. Baldwin*, 152 Va. 800, 148 S.E. 831 (1929),[2] does not determine the case in favor of Fine and Salzberg as it contends. In that case, a resident of Virginia had subscribed to and owned stock in a North Carolina bank, and in a suit in Virginia against that stockholder for excess liability on insolvency, the court refused to apply the borrowing statute because the subscriber was a resident of Virginia and *not* of North Carolina. While the rule of that case would require non-application of the statute if Western Auto were not a resident of California, the fact that Western Auto is a resident of California precludes *Norman's* application to control this case in favor of Fine and Salzberg. Our opinion is supported by the case of *Connecticut Mutual Life Insurance Company v. Duerson's Executor*, 69 Va. (28 Gratt) 630 (1877). In that case, a domestic Connecticut corporation was held to be a resident of Virginia for the purpose of asserting a statute of limitations in what can only be regarded as a rare case in which a statute of limitations could have been asserted as a defense by a resident but not by a non-resident. The peculiar situation came about by the suspension of operation of contracts during the Civil War, during which time, however, Connecticut Mutual had retained its residency in the Commonwealth. The case is a square holding that a corporation may be a resident of a State other than the State of its domestication for the purpose of asserting a statute of limitations, the exact purpose for which dual residency is claimed here.

Since under *Connecticut Mutual*, under Virginia law, a domestic corporation of a foreign State may be a resident of Virginia, it certainly may be a resident of California as is here admitted. The application of the Virginia statute does not depend on whether or not the party to be charged is a resident of Virginia; it depends on whether the party is a resident of the foreign State, in this case California.

Since Western Auto was a resident of California at the time of the making of the lease, we think it is a matter of indifference how many other States it may have been a resident of. The vital question here is whether or not it was a resident of California, which it was.

■ Having decided that the Virginia borrowing statute properly applies, we turn now to California's statute of limitations. The general statute of limitations is § 337 of the California Code of Civil Procedure, which provides a four-year period of limitations on written obligations. California case law is to the effect that if the period for the performance of the contract is fixed, the right of action accrues and the statut ˜ begins to run at the expiration of that period and not before. *Kaye v. M'Divani*, 6 Cal.App.2d 132, 44 P.2d 371 (1935) (citing *Fratt v. Hunt*, 108 Cal. 288, 41 P. 12).

The period for performance was fixed under this lease. The tenant was to make rental (and other) payments and was to have possession of the property during the period between February 1, 1960 and January 31, 1970. Under these principles, the four-year limitation on this lease ended January 31, 1974, more than a year before the bringing of this suit.

■ But, the plaintiff argues now that if California law applies and § 337.2, California Code of Civil Procedure, governs the

2. *Norman* was decided under the forerunner to § 8–23, § 5825 Code of Virginia (1919). The wording of the older statute is identical to § 8–23.

case,[3] it extends the filing time until June 1975, four years after the conclusion of the holdover tenancy.

Section 337.2 provides:

"[Lessee's breach of written lease: Four years] Where a lease of real property is in writing, no action shall be brought under Section 1951.2 of the Civil Code more than four years after breach of the lease and abandonment of the property, or more than four years after the termination of the right of the lessee to possession of the property, whichever is the earlier time."

We are of opinion that § 337.2 applies only to actions under § 1951.2. The statute, § 337.2, provides this in plain terms: ". . . no action shall be brought *under Section 1951.2. . . .*" (Italics added). Section 1951.2 was added to California law at the same time as § 337.2 with the same effective date. The comment of the Law Revision Commission to § 337.2 is as follows:

"The four-year period provided in Section 337.2 is consistent with the general statute of limitations applicable to written contracts. See Section 337. Although the former law was not clear, it appears that, if the lessor terminated a lease because of the lessee's breach and evicted the lessee, his cause of action for the damages resulting from the loss of the rentals due under the lease did not accrue until the end of the original lease term. (Citations omitted). Under Civil Code Section 1951.2, however, an aggrieved lessor may sue immediately for the damages resulting from the loss of the rentals that would have accrued under the lease. Accordingly, Section 337.2 relates the period

of limitations to breach and abandonment or to termination of the right of the lessee to possession."

Thus, when the lessee breaches the lease and abandons the premises, or when the lessor terminates the right to possession, § 1951.2[4] changes the previous case law by allowing the lessor to sue for the rentals not yet due under the lease *before* the expiration date fixed by the lease, that is, at the time of the breach of lease and abandonment or termination of right of the lessee to possession *"by the lessor."* (Emphasis added).

But here we have neither situation described in § 1951.2. Western Auto, the tenant, did not breach the lease and abandon the property before the end of the term. Fine and Salzberg did not terminate the "right to possession" of Western Auto. Because neither condition of § 1951.2 is met, § 337.2 should not apply.

■ But Fine and Salzberg argues that this lease did not terminate until June 1971, when Western Auto surrendered possession. It says the tenant's continued possession prevented the accrual of the cause of action (and prevented the running of the statute of limitations) because the holdover tenancy extended the period of performance under the original lease. For this position, they cite *Schmitt v. Felix*, 157 Cal.App.2d 642, 321 P.2d 473, 475, which states, "where a lease gives an option 'to renew' the lease for a specified term without requiring the execution of a new lease, the extension is a continuation of the tenancy under the original lease."

Although the lease here contains such an option,[5] that option was not exercised in

---

**3.** Although passed in 1970, §§ 1951.2 and 337.2 were not effective until July 1, 1971. The cause of action under this lease accrued prior to the effective date of the statute and there is some question of whether a California court would use it in such circumstances. We express no opinion on this question and need not decide it since we are of opinion that §§ 1951.2 and 337.2 are not appropriately applied to the facts of this case.

**4.** Section 1951.2 reads in pertinent part:

"§ 1951.2 [Breach by lessee: Lessor's remedies: Indemnification for prior liabilities of lessee]
(a) . . . if a lessee of real property breaches the lease and abandons the property before the end of the term or if his right to possession is terminated by the lessor because of breach of the lease, the lease terminates. Upon such termination, the lessor may recover from the lessee:"
\*   \*   \*   \*   \*   \*

**5.** "22. The Lessee shall have the right to extend the term of this lease for a period of five

writing on or before October 1969, as the provision requires, nor was it exercised at all. Western Auto's extended possession of the property was not under the option to renew, but under the provision for holding over.

Fine and Salzberg then cites 49 Am.Jur. 2d Landlord & Tenant, § 1146 at 1099–1100 [6] as authority that the holdover tenancy extended the expiration date of the lease to June 1971. But we note the Am. Jur. citation does not apply when there is a new arrangement governing the holding over. Additionally, and more important, is the fact that the lease in this case provides that a holdover tenancy is not a renewal or extension of the original lease, and we think it inescapable that the holdover tenancy is a new tenancy and not an extension of the old, for the lease provides:

"In the event the Lessee shall holdover after the expiration or termination of the term of this lease, or any extension thereof, *said holding over shall not be deemed to be a renewal or extension of this lease* or any extension thereof or the exercise of any option to extend or renew this lease *but said holding over shall be deemed a tenancy from calendar month to calendar month* at a monthly rental equal to the rental for the last month paid under the lease. A month to month tenancy arising by holding over under this paragraph may be terminated by either Lessor or Lessee giving written notice to the other party hereto on or before the day any monthly rent is due with termination becoming effective on the day the next following monthly rental would have otherwise become due." (Emphasis added).

In a case much like this one, *Kaye v. M'Divani*, 6 Cal.App.2d 132, 44 P.2d 371 (1935), the California court held that the holdover clause creating a month-to-month tenancy did not extend the life of the original lease. Thus, the cause of action accrued upon the expiration of the written lease.

The holdover clause in the lease before us definitively states that the holdover tenancy is from month-to-month and does not extend the life of the original lease. We think a California court would give effect to the clear intent of the parties expressed in the holdover clause and thus find the lease in question here expired on January 31, 1970. It follows that the limitations period started on that date and had expired before the suit was brought.

We are of opinion, then, that the statute of limitations, § 337, would bar this action in California and that under § 8–23 of the Code of Virginia the suit is likewise barred in the courts of Virginia. The judgment of the district court is

*AFFIRMED.*

---

(5) years beginning February 1, 1970 and ending January 31, 1975, at a monthly rental of $1,200.00 per month, subject to the covenants, agreements, terms and conditions of this lease, which right may be exercised by the Lessee notifying the Lessor in writing mailed to Lessor at the address for making rental payments hereunder on or before October__*, 1969 of the Lessee's election so to extend the term of this lease. If Lessee exercises the right of extension contained in this paragraph, it also agrees to pay any percentage rental which may accrue under paragraph 21 as applied to said extension period."

\* illegible

**6.** 49 Am.Jur. 2d Landlord & Tenant, § 1146, at 1099–1100:

"In the absence of such a statute, or a provision in the new lease, *or a new arrangement governing the holding over*, the general rule is that the tenancy arising from the tenant's holding over with the consent of the landlord is presumed to be upon the same covenants and terms as the original lease, so far as they are applicable to the new tenancy. In other words, a holdover tenant continues to be bound as a general thing by the covenants which were binding upon him during the term. (Emphasis added).